J-S68007-14

2014 PA Super 264

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM CONAWAY, | |
| Appellant | No. 2312 EDA 2013 |

Appeal from the Judgment of Sentence entered April 26, 2013,
in the Court of Common Pleas of Bucks County,
Criminal Division, at No(s): CP-09-CR-0006897-2012

BEFORE: ALLEN, JENKINS, and MUSMANNO, JJ.

OPINION BY ALLEN, J.:                                        **FILED NOVEMBER 26, 2014**

William Conaway, ("Appellant"), appeals from the judgment of sentence imposed following his conviction by a jury of burglary, for which the trial court sentenced Appellant to a term of imprisonment of five to ten years.[1]  Appellant was additionally convicted of theft by unlawful taking, receiving stolen property, and fleeing and eluding a police officer.[2]  On appeal, Appellant does not challenge his convictions or judgment of sentence regarding these additional crimes.[3]  After careful consideration, we vacate

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1).

[2] 18 Pa.C.S.A. §§ 3921(a), 3925(a), and 3733(a).

[3] While the trial court did not impose penalties regarding Appellant's convictions for theft by unlawful taking or for receiving stolen property, the
*(Footnote Continued Next Page)*

Appellant's judgment of sentence. Additionally, we remand for a new trial regarding Appellant's burglary conviction only.

The trial court set forth the factual background relative to this action as follows:

> On September 4, 2012, Nancy Shvanda was at home watching her grandchildren while her son Jason Shvanda, who lived with her at the time, was at work. N.T. 2/26/2013, p. 45, 71. Ms. Shvanda's home is located in Doylestown, Pennsylvania. N.T. 2/26/2013, p. 34. This home's garage is attached to the kitchen. N.T. 2/26/2013, p. 38. Ms. Shvanda was the owner of a 2002 Lexus which she stored in her home's garage. N.T. 2/26/2013, p. 43.
>
> Upon Mr. Shvanda's arrival home from work, Ms. Shvanda got ready to leave the home. She placed her purse and several food containers into her car and started the ignition. She then went back into the house after realizing she had forgotten something. N.T. 2/26/2013, pp. 45-48, 73. As she was retrieving the forgotten item, she noticed that her car was leaving her garage. N.T. 2/26/2013, p. 50, 74.
>
> Ms. Shvanda and Mr. Shvanda realized that the car was being stolen. Mr. Shvanda chased after the car while Ms. Shvanda ran inside to call 911. N.T. 2/26/2013, pp. 51-52, 75. The driver's side door opened and the occupant threw the purse out of the car. N.T. 2/26/2013, p. 76. Ms. Shvanda's purse was later recovered in the street near her house. Mr. Shvanda ran alongside the car and punched the driver's side window, and while doing so he observed an older white male driving the car. N.T. 2/26/2013, p. 76.
>
> Ms. Shvanda never saw the person who stole her car, but she believes she did see his shadow. N.T. 2/26/2013, p. 66. Mr. Shvanda chased the car but stopped when he realized that

_(Footnote Continued)_ ─────────────

trial court did impose a sentence of eighteen months to three years for Appellant's conviction for fleeing or attempting to elude an officer, to run consecutively with Appellant's sentence for burglary.

the car would remain in the neighborhood, given the series of turns it had made and the fact that Blakemore Court is a cul-de-sac. N.T. 2/26/2013, p. 78. The car reappeared around the same time that law enforcement arrived on the scene. N.T. 2/26/2013, pp. 79-80.

Sergeant Wetmore of the Doylestown Township Police Department was on duty and riding alone in a patrol car on the day of the incident. N.T. 2/26/2013, pp. 92-93. He heard via radio that a vehicle had been stolen from a garage in Doylestown and traveled to that location. N.T. 2/26/2013, p. 94. As Sergeant Wetmore's car and the Lexus approached each other head-on, the Lexus swerved at the latest possible moment, driving over the curb and narrowly missing a tree. N.T. 2/26/2013, pp. 81, 95.

Mr. Shvanda again approached the car for the purpose of being able to identify the driver at a future time. He observed that the driver was a white male with short gray hair wearing a gray shirt. Mr. Shvanda looked at him for three or four seconds. At trial, Mr. Shvanda identified [Appellant] as the same man he had seen inside the Lexus on that day. N.T. 2/26/2013, pp. 81-82. Mr. Shvanda also provided the police officer on scene information about the direction in which the Lexus had traveled. N.T. 2/26/2013, p. 83. After avoiding a head-on collision and failing to heed Sergeant Wetmore's direction to stop, the driver of the Lexus left the cul-de-sac in which the Shvanda house was located and turned onto Lower State Road toward Doylestown Township. N.T. 2/26/2013, pp. 95-96.

Officer Stephen Thomas of the Buckingham Township Police Department was also on duty on September 4, 2012. N.T. 2/26/2013, p. 104. He heard a radio transmission about a car being stolen out of a woman's garage, and he positioned his vehicle on PA Route 611 in such a way that it stopped all of the traffic from proceeding through the intersection with Almshouse Road. The Lexus emerged from the line of cars stopped by Officer Thomas and then traveled on the southbound shoulder past Officer Thomas's vehicle, followed by a Doylestown Township police car. N.T. 2/26/2013, pp. 105-06. Officer Thomas continued following the Lexus and soon became the lead vehicle behind it. He observed the driver of the Lexus weaving through traffic to get away from police. N.T. 2/26/2013, p. 108. The chase continued over several roads, and at one point, they were travelling at 75 miles per hour (MPH) in a 45-MPH zone.

N.T. 2/26/2013, p. 109. Officer Thomas discontinued the chase because he felt it had become too dangerous. He observed that the driver of the car was an older male, but did not see him well enough to be able to recognize him if he saw him again. N.T. 2/26/2013, pp. 110-11.

Stanley Weber lives in Warminster, PA, and was at home on September 4, 2012. After receiving a phone call from a neighbor at around 7:30 P.M., Mr. Weber went outside and saw a man inside his van, which was parked in the driveway. The man was going through a box of clothing that Mr. Weber intended to donate to charity. N.T. 2/26/2013, p. 113-16. The driver's side door was open and the man had one foot on the ground and the other on the sill of the van. Mr. Weber grabbed him, pulled him out of the van, and asked what he was doing. The man replied that he was looking for his uncle. N.T. 2/26/2013, p. 117. Mr. Weber observed the man to be a white male approximately in his forties with a shaved head and a large scar on the back of his head, wearing sweatpants and a sweatshirt that were "graying in color." Mr. Weber identified [Appellant] as the man he saw in his van on September 4, 2012. N.T. 2/25/2013, pp. 117-18. The man walked down the driveway and made a right turn as Mr. Weber was calling 911. N.T. 2/26/2013, p. 119.

Officer Christopher O'Neill of the Warminster Township Police Department K-9 Unit was also on duty on September 4, 2012. N.T. 2/26/2013, pp. 122-23. He responded to a call regarding a suspicious vehicle in Warminster Township. Once there, he spoke with a woman and observed someone in a yard bordering Mr. Weber's home. The individual was a white male wearing gray sweatpants but no shirt, and he was raking leaves. He told Officer O'Neill that his name was Phil Morrow, and he lived at the property, which was owned by his uncle. N.T. 2/26/2013, pp. 125-26. He was wearing a hospital bracelet that said his name was William Conaway. This individual was then placed in the patrol car and his pockets were emptied. N.T. 2/26/2013, pp. 127-28. A Visa debit card and a MasterCard in the name of William Conaway were found in his pockets. A 2002 Lexus was found in Mr. Weber's driveway. N.T. 2/26/2013, p. 129. The K-9, Blitz, tracked the scent from the Lexus to Mr. Weber's and back to the bordering yard. N.T. 2/26/2013, pp. 137-40.

Sergeant Bryon Rose of the Doylestown Township Police Department investigated the theft of the car in Doylestown. He photographed and inventoried the 2002 Lexus on September 5, 2012, and he found medical papers inside the vehicle, including a hospital discharge form with the name William Conaway. N.T. 2/26/2013, pp. 152-61.

Sergeant Lance Carlen of the Doylestown Borough Police Department testified that he responded to the area of the theft in Doylestown Township on the evening of September 4, 2012. N.T. 2/27/2013, pp. 12-15. He received word via radio that the vehicle, a silver Lexus, was departing the area. N.T. 2/27/2013, pp. 15-17. En route, Sergeant Carlen observed a silver Lexus that fit the stolen vehicle's description, and he followed it. N.T. 2/27/2013, pp. 16-17. The Lexus evaded Sergeant Carlen and ran multiple stop signs without stopping, exceeding the posted speed of 25 MPH. N.T. 2/27/2013, pp. 17-22.

At one point during the pursuit on State Street, Sergeant Carlen got beside the Lexus, observed the driver, and noted that he was an older white male with salt and pepper cropped hair and a gray sweatshirt. N.T. 2/27/2013, p. 22. Sergeant Carlen identified [Appellant] as the individual driving the Lexus on September 4, 2012. N.T. 2/27/2013, p. 22. The sergeant chased the vehicle through Doylestown Borough and when he got beside the vehicle again, he observed the driver a second time for a period of one to two seconds. N.T. 2/27/2013, p. 23.

After following the Lexus South on 611, Sergeant Carlen ceased pursuit because he determined it was no longer safe. N.T. 2/27/2013, pp. 27-29. Sergeant Carlen was well out of his jurisdiction, and other law enforcement vehicles were following the silver Lexus. N.T. 2/27/2013, pp. 27-29. Later that evening, Sergeant Carlen received a call from Warminster Township Police, requesting that he attempt to identify an individual believed to be the driver of the Lexus. N.T. 2/27/2013, p. 34. Sergeant Carlen responded and identified the apprehended individual as [Appellant]. N.T. 2/27/2013, pp. 35-36.

Sergeant Charles Zeigler of the Doylestown Township Police Department testified that he participated in the investigation on September 4, 2013. N.T. 2/27/2013, pp. 51-52. He took possession of evidence which included a gray sweatshirt and debit and credit cards with the names William

Conway and William Conaway. N.T. 2/27/2013, p. 58. Doylestown Hospital and the Shvanda home are within approximately 15-20 minutes walking distance of each other. N.T. 2/27/2013, p. 60.

Trial Court Opinion, 1/23/14, at 1-6.

Appellant was charged with the aforementioned crimes. The trial court

summarized the procedural posture that followed:

[Appellant] waived his arraignment on November 16, 2012. His trial was initially scheduled for January 7, 2013, but was continued several times. The trial commenced on February 25, 2013, and a verdict was returned on February 27, 2013. The jury found [Appellant] guilty of Counts 1 through 4. Sentencing was deferred until a pre-sentence investigation ("PSI") could be completed, and on April 26, 2013, [Appellant] was sentenced as follows:

On Count 1, burglary, five to ten years imprisonment, and [o]n Count 4, fleeing or attempting to elude an officer, eighteen months to three years imprisonment, to run consecutively to the sentence imposed on Count 1.[4]

*Id.* at 7-8.

This appeal followed. Both Appellant and the trial court have complied

with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

I. WHETHER THE TRIAL COURT ABUSE[D] ITS DISCRETION BY INSTRUCTING THE JURY THAT THE COMMONWEALTH PROVED BEYOND A REASONABLE DOUBT THAT THE PROPERTY ENTERED WAS "A BUILDING OR OCCUPIED STRUCTURE, OR SEPARATELY SECURED OR OCCUPIED PORTION THEREOF THAT IS ADAPTED FOR OVERNIGHT ACCOMMODATIONS"?

_____

[4] As noted, *supra,* the trial court did not impose further penalties at Count 2, theft by unlawful taking, and Count 3, receiving stolen property.

II. WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED BY THE COMMONWEALTH AT TRIAL TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] ENTERED A BUILDING OR OCCUPIED STRUCTURE, OR A SEPARATELY SECURED OR OCCUPIED PORTION THEREOF THAT IS ADAPTED FOR OVERNIGHT ACCOMMODATIONS, WHEN THE PROPERTY ENTERED WAS AN ATTACHED GARAGE?

III. WHETHER THE CRIMINAL INFORMATION FAILED TO SET FORTH THE ESSENTIAL ELEMENTS OF THE BURGLARY OFFENSE IN A PLAIN AND CONCISE MANNER SUFFICIENT TO INFORM THE APPELLANT OF THE NATURE AND CAUSE OF ACTION AGAINST HIM?

Appellant's Brief at 4.

With regard to Appellant's first issue challenging the trial court's jury instruction, the trial court instructed the jury on Count 1 as follows:

[Appellant] has been charged with burglary. To find [Appellant] guilty of this offense you must find that all of the following elements have been proven beyond a reasonable doubt.

First, that [Appellant] entered 16 Blakemore Court, Doylestown, Pennsylvania.

Second, that [Appellant] entered 16 Blakemore Court with the intent to commit a crime therein.

Third, that 16 Blakemore Court was not opened to the public at the time.

And, fourth, that [Appellant] did not have permission or lawful authority to enter.

Fifth, that 16 Blakemore was a building or occupied structure or separately secured or occupied portion thereof that is adapted for overnight accommodation.

Six, that the person was present at the time of the offense.

N.T. 2/27/2013, pp. 141-42. The Court provided the additional instruction regarding the fifth element: "If you find -- and it will

be for you to find whether or not the garage was entered in this case. I will tell you that the Commonwealth has met the fifth prong because this is a legal determination that the Court will deal with in this case." N.T. 2/27/2013, pp. 141-143. [Appellant's] counsel objected to the instruction, asserting that it should be a factual determination.

Trial Court Opinion, 1/23/14, at 7.

In challenging this instruction, Appellant contends:

[T]he trial court erred when it instructed the jury that the court had determined that the Commonwealth had [established] [the fifth prong of the burglary charge] that the property entered was a building or occupied structure or separately secured portion thereof that is adapted for overnight accommodations.

The Sixth Amendment guarantees the right to a trial by a jury and that each element of each crime charged is to be proven to that jury, beyond a reasonable doubt. The trial court's instruction usurped the jury's function as the ultimate fact finder[.]

Appellant's Brief at 11. Appellant further maintains that "[p]ursuant to the Federal and State constitutions, and the holdings of *Apprendi and Alleyne,* the absence of a jury finding on the fifth prong of the burglary charge renders Appellant's conviction invalid and the sentence imposed illegal." *Id.* at 18. We agree with Appellant that the trial court impermissibly usurped the jury's fact-finding role as to the fifth element of the burglary charge, and find that Appellant is entitled to a new trial for the reasons set forth below.

"When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and

- 8 -

accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law." **Commonwealth v. Roser**, 914 A.2d 447, 455 (Pa. Super. 2006) (internal citation omitted).

Moreover, we have explained:

"A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." *Commonwealth v. Robinson,* 931 A.2d 15, 19–20 (Pa.Super. 2007) (*en banc*). The phrase 'illegal sentence' is a term of art in Pennsylvania Courts that is applied to three narrow categories of cases. *Id.* at 21. Those categories are: "(1) claims that the sentence fell 'outside of the legal parameters prescribed by the applicable statute'; (2) claims involving merger/double jeopardy; and (3) claims implicating the rule in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)." *Id.* The instant case falls into the latter category.

In *Apprendi,* the Supreme Court of the United States held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Stated another way, it "is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* (quoting *Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311, (1999) (Stevens, J. concurring)).

***

[Subsequently] in *Alleyne [v. United States,* -- U.S. --, 133 S.Ct. 2151 (2013)]*,* the United States Supreme Court…h[eld] that any fact that increases the mandatory minimum sentence for a crime "is 'an element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne,* 133 S.Ct. at 2155, 2163. The *Alleyne* majority

- 9 -

reasoned that "[w]hile *Harris* [*v. United States*, 536 U.S. 545 (2002),] limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." *Alleyne*, 133 S.Ct. at 2160. This is because "[i]t is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime[,]" and "it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment." *Id.* at 2161. Thus, "[t]his reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.*

*Commonwealth v. Munday,* 78 A.3d 661, 664-666 (Pa. Super. 2013).

The Crimes Code provides in pertinent part:

**§ 3502. Burglary**

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

\*\*\*

**(c) Grading.--**

- 10 -

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) As follows:

(i) Except under subparagraph (ii), an offense under subsection (a)(4) is a felony of the second degree.

(ii) If the actor's intent upon entering the building, structure or portion under subparagraph (i) is to commit theft of a controlled substance or designer drug as those terms are defined in section 2 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, burglary is a felony of the first degree.

18 Pa.C.S.A. § 3502 (footnote omitted).

In positing that its jury instruction regarding Appellant's burglary charge was proper, the trial court reasoned:

'A person commits the offense of burglary if, with the intent to commit a crime therein, the person: (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]' 18 Pa. C.S. § 3502(a)(1) (effective September 4, 2012). 'Occupied structure' is separately defined as '[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present.' 18 Pa. C.S. § 3501. The focus of the determination of whether a structure is adapted for overnight accommodation is the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited. Com. v. Nixon, 801 A.2d 1241, 1247 (Pa. Super. 2002) (upholding a burglary conviction based on a determination that an unoccupied row home undergoing renovation without electricity or water was a structure adapted for overnight accommodation within the meaning of the statute); Com. v. Rivera, 983 A.2d 767 (Pa. Super. 2009) (upholding a conviction relying on a determination that a basement was adapted for overnight accommodation, although it was not accessible from the rest of a house divided into separate apartments); Com. v. Jackson, 585 A.2d 533 (Pa. Super. 1991) (upholding a finding that a house was an occupied

- 11 -

structure, where the victim was sitting on the back porch but unaware of the defendant's entry).

***

The instruction given in this case on the fifth element of the burglary charge was proper. This element involves a mixed issue of fact and law. The issue of fact is whether [Appellant] entered the structure at issue. The question of law is whether that portion of the structure is a 'building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations.' Like the back porch in Jackson, and the basement in Rivera, the attached garage in this case is inherently part of 16 Blakemore Court. Uncontradicted evidence demonstrated that three adults and one child lived continuously in the home, that the garage attached directly to the kitchen, and that the family frequently used the garage. In addition, at the time of the offense, Ms. Shvanda was actually in the doorway between the kitchen and garage. Under these circumstances, the garage was a part of an 'occupied structure' as defined by the statute and caselaw.

The Court did not usurp the jury's role as the factfinder. The jury made a factual finding on the fifth element about whether [Appellant] entered the garage. Allowing arguments regarding whether the garage constituted an 'occupied structure' or whether it was a 'portion thereof that [was] adapted for overnight accommodations' would have served only to unnecessarily confuse the jury. Thus, the Court struck an appropriate balance framing the legal issue and allowing the jury to find whether the defendant entered the garage.

Trial Court Opinion, 1/23/14, at 11-14. We cannot agree.

In **Commonwealth v. Burwell,** we found that the trial court had committed reversible error in instructing the jury in an aggravated assault case, and reasoned:

[The trial court] stated the following in his instructions to the jury:

Now, serious bodily injury means impairment of physical condition which increased a substantial risk of death or

which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. **Now, under the circumstances, it appears that the injuries suffered by Mr. Regruth constitute serious bodily injury.** But that is a decision for you to make.

N.T. Jury Trial, 3/18/2009, at 73–74 (emphasis added). Although we are well aware that the trial court informed the jury that the question of whether Burwell caused the victim to suffer serious bodily injury was ultimately its decision, we cannot underestimate the weight that a jury would afford the opinion of a trial judge who opines that the element of serious bodily injury was proven in a case. *Commonwealth v. Claiborne,* 175 Pa.Super. 42, 102 A.2d 900 (1953) ("[J]udge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance[.]"). It is very possible that the judge's comments usurped the jury's fact-finding role and prejudiced Burwell. *See Commonwealth v. McCoy,* 401 Pa. 100, 162 A.2d 636 (1960) (trial judge's negative characterization of defendant in charge to jury prejudiced defendant's right to fair trial before impartial jury despite judge's statement that jury had absolute discretion to determine verdict)[.]

**Commonwealth v. Burwell,** 42 A.3d 1077, 1083-1084 (Pa. Super. 2012).

Given that in **Burwell** we found that the trial court committed reversible error in *opining* to the jury that the Commonwealth had proved an element of the charged crime, it follows here that the trial court likewise erred in *specifically instructing* the jury that the Commonwealth had established an element of the burglary charge because that disputed element was a grading factor. **See** 18 Pa.C.S.A. § 3502(a)(3), and 3502 (c)(1)-(2); **see also Munday,** 78 A.3d at 664-666. As in **Burwell**, our determination is not affected by the fact that the trial court instructed the jury that the jury would be the fact finder regarding the remaining elements

of burglary. **Burwell, supra,** at 1083. Accordingly, we find that Appellant's first issue warrants relief.

In his second issue, Appellant contends that "there was insufficient evidence for the trial court to conclude that the attached garage was a building or occupied structure or separately secured or occupied portion thereof that was adapted for overnight accommodation." Appellant's Brief at 18. Our reversal of Appellant's burglary conviction renders Appellant's sufficiency challenge moot, and we decline to reach it.

In his third issue, Appellant challenges the sufficiency of the criminal information, which the Commonwealth filed relative to the burglary charge. We will reach this issue since it will be relevant on remand. Specifically, Appellant contends:

> [T]he [c]riminal [i]information filed by the Commonwealth failed to set forth essential elements of the burglary offense in a manner that sufficiently informed [Appellant] of the elements of the crime charged. Under the subsection of the burglary statute that the Appellant was charged, the Commonwealth was required to prove that Appellant entered a structure adapted for overnight accommodation and that a person was present. As those elements were missing from the information, the Commonwealth failed to provide sufficient notice of the charge it intended to prove, in violation of the United States and Pennsylvania Constitutions and the Pennsylvania Rules of Criminal Procedure.

Appellant's Brief at 11-12. We disagree.

We have opined:

> The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act.

*Commonwealth v. Ohle,* 503 Pa. 566, 588, 470 A.2d 61, 73 (1983); *Commonwealth v. Diaz,* 477 Pa. 122, 383 A.2d 852 (1978); *Commonwealth v. Rolinski,* 267 Pa.Super. 199, 406 A.2d 763 (1979).  An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. *Commonwealth v. Bell,* 512 Pa. 334, 343, 516 A.2d 1172, 1177 (1986); *Commonwealth v. Ohle,* 503 Pa. 566, 588, 470 A.2d 61, 73 (1983); *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); See Pa.R.Crim.P. 225(b).  This may be accomplished through use of the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), quoting, *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882 [1881]).

**Commonwealth v. Chambers,** 852 A.2d 1197, 1199 (Pa. Super. 2004)

**citing Commonwealth v. Alston,** 651 A.2d 1092, 1095-1096 (Pa. 1994).

Here, the criminal information provided in pertinent part:

The Attorney for the Commonwealth of Bucks County by this information charges that in the County of Bucks, Pennsylvania, [Appellant]:

**Count 1:** **Burglary–Overnight Accomodation, Person Present - (F1) 18 [Pa.C.S.A.] §§ A1**

Offense Date: 9/4/12

[D]id enter a building or occupied structure, or separately secured or occupied portion thereof, to wit, 16 Blakemore Court, Doylestown, with intent to commit a crime therein, and the premises were not open to the public nor was the actor licensed or privileged to enter.

* * *

Citation of Statute and Section:

1. 18 [Pa.C.S.A.] § 3502 §§ A1 (F1)[.]

Information, 11/14/12, at 1 (emphasis in original).

Contrary to Appellant's assertion, the criminal information on its face did set forth, in bold script, the required elements of "Overnight Accommodation" and "Person Present" relative to Appellant's burglary charge. Moreover, in at least two locations, the Commonwealth noted the specific penal statute, subsection, and felony grade with which Appellant was charged. We agree with the trial court that "[t]aken as a whole, this provided [Appellant] with sufficient detail about the accusation and elements and enough notice in order to prepare a defense. Therefore, the information was sufficient." Trial Court Opinion, 1/23/14, at 10. Appellant's claim regarding his criminal information is unavailing.

Given the foregoing, we vacate Appellant's burglary conviction and remand for a new trial on the burglary count only. Appellant's remaining convictions stand. However, because we are vacating a conviction in a multiple count case, and vacating Appellant's burglary conviction may upset the overall sentencing scheme vis-a-vis Appellant's other convictions, we vacate the entire judgment of sentence. *See Commonwealth v. Brown*, 26 A.3d 485, 510 (Pa. Super. 2011) *citing* **Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283-84 (Pa. 1986).

Case remanded for a new trial regarding burglary only, and for re-sentencing on all convictions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/26/2014