J-S79025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NELSON JAMES SIMMONS, | |
| Appellant | No. 567 EDA 2014 |

Appeal from the Judgment of Sentence of February 2, 2009
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001338-2008

BEFORE:  ALLEN, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 13, 2015**

Appellant, Nelson James Simmons, appeals from the judgment of sentence entered on February 2, 2009, as made final by the denial of his post-sentence motion on February 11, 2009.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> [On January 9, 2006, at 7:25 a.m.], the Pennsylvania State Police w[ere] contacted by Jon Tyner [("Tyner")], a businessman from Ohio, and dispatched to the Mobil[] Station[] on Catasauqua Road in Lehigh County, Pennsylvania.  Tyner reported that at approximately 5:50 [a.m.], two [] men knocked on his motel room door at the Red Roof Inn on Catasauqua Road in Lehigh County, claiming that they had caused damage to his rental vehicle that was parked directly outside of his motel room. Tyner consequently opened the motel room door and [Appellant] and [c]o-[d]efendant Alexander Lopez [("Lopez")] entered the motel room. [] Lopez pointed a black semi-automatic handgun with silver trim at [Tyner].  Tyner was placed face down on the bed in the motel room, and his head was covered with a [t]-

* Retired Senior Judge assigned to the Superior Court.

shirt. [Appellant] and [] Lopez then ransacked the motel room and took $80.00 in cash and a cellular phone valued at approximately $100.00 to $175.00. Neither [Appellant] nor [Lopez] had permission to take the cell phone or the cash.

In an effort to obtain more money, [] Lopez took Tyner's credit cards. [Appellant] left with the credit cards to withdraw funds from Tyner's bank account. At one point, [] Lopez placed the handgun to Tyner's head and a brief struggle ensued. Tyner realized that [] Lopez was becoming increasingly agitated and consequently suggested that he would accompany [Lopez] to the bank to withdraw money. [] Lopez wrote a note on the back of one of Tyner's business cards to inform [Appellant] of the new plans. [Appellant] had Tyner place a knit hat over his head. As [] Lopez and Tyner were leaving the motel room, [Appellant] returned. Therefore, all three [] men drove in Tyner's rental vehicle to the Bank of America, also located on Catasauqua Road. [Appellant] and Tyner unsuccessfully attempted to effectuate a withdrawal at the bank. [Lopez] remained in Tyner's vehicle. While [Appellant] and [Lopez] were conversing with each other and appeared to be distracted, Tyner seized the opportunity to escape. Tyner fled to the Mobil[] gas station on Catasauqua Road and contacted the authorities.

[Tyner]'s rental car, a Pontiac Gram Am, was subsequently found in an alley behind the Red Roof Inn and a black and silver B[e]rsa .45 caliber semi-automatic handgun was located on the front passenger seat of the vehicle. In the motel room, the authorities found [Tyner's] business card with the note on it. Fingerprints were lifted from Tyner's business card on which [Lopez] had written the note to [Appellant]. These fingerprints matched those of [] Lopez. The authorities also recovered three [] credit cards and a gray [t]-shirt. No latent fingerprints were attained from the three [] credit cards. Additionally, the surveillance tapes from the Bank of America were retrieved and depicted [Appellant] and Tyner utilizing the bank's ATM machine. Furthermore, a knit hat was recovered from [Tyner].

On June 20, 2007, notification was received that the DNA profile obtained from the knit hat matched that of [Appellant]. As a result of this DNA match, the authorities attempted to locate [Appellant]. On November 1, 2007, Trooper Raymond Judge of the Pennsylvania State Police learned that [Appellant] was in Lehigh Valley Hospital, Cedar Crest Campus, Allentown, Lehigh

County, as a result of being the victim of a shooting. Thereafter, a search warrant was executed on November 14, 2007, ordering that [Appellant] submit two [] vials of blood. The DNA obtained from [Appellant]'s vials of blood matched the DNA found in the knit hat. Consequently, after **Mirandizing**[1] Appellant,] and with his consent, [Appellant] was interviewed on December 6, 2007. [Appellant] provided a verbal and written statement to the police which implicated him in the [crime. Appellant] also identified his [co-conspirator as] Lopez.

Trial Court Opinion, 3/11/14, at 1-2 (internal citations, honorifics, and footnote omitted; first and third paragraph breaks added).

The procedural history of this case is as follows. On April 22, 2008, Appellant was charged via criminal information with kidnapping,[2] robbery,[3] robbery of a motor vehicle,[4] possession of a firearm by a prohibited person,[5] theft by unlawful taking,[6] receiving stolen property,[7] simple assault,[8] and conspiracy to commit robbery.[9] On November 20, 2008, Appellant was convicted of kidnapping, robbery, robbery of a motor vehicle, and conspiracy

---

[1] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] 18 Pa.C.S.A. § 2901(a)(2).

[3] 18 Pa.C.S.A. § 3702.

[4] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[5] 18 Pa.C.S.A. § 6105(a)(1).

[6] 18 Pa.C.S.A. § 3921.

[7] 18 Pa.C.S.A. § 3925.

[8] 18 Pa.C.S.A. § 2701(a)(3).

[9] 18 Pa.C.S.A. § 903.

to commit robbery. He was subsequently sentenced to an aggregate term of 29 to 80 years' imprisonment. Appellant's sentencing guidelines were calculated using the deadly weapon enhancement/possessed matrix.

Appellant filed a notice of appeal which this Court dismissed. *Commonwealth v. Simmons*, 4 A.3d 198 (Pa. Super. 2010) (*per curiam*) (unpublished memorandum), *appeal denied*, 14 A.3d 827 (Pa. 2011). On January 5, 2012, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Counsel was appointed and, on April 12, 2012, the PCRA court granted Appellant's petition and reinstated his direct appellate rights *nunc pro tunc*. Appellant filed his *nunc pro tunc* appeal and, on March 20, 2013, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Simmons*, 69 A.3d 1297 (Pa. Super. 2013) (unpublished memorandum).

On April 24, 2013, Appellant filed a second *pro se* PCRA petition. Counsel was appointed and, on January 16, 2014, the PCRA court granted Appellant's second PCRA petition and once again reinstated his direct appellate rights *nunc pro tunc*. This timely appeal followed.[10]

Appellant presents one issue for our review:

Whether the [t]rial [c]ourt erred in sentencing [Appellant] under the [d]eadly [w]eapon [e]nhancement/[p]ossessed [m]atrix

---

[10] On February 18, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On March 3, 2014, Appellant filed his concise statement. On March 11, 2014, the trial court issued its Rule 1925(a) opinion. Appellant's lone issue on appeal was included in his concise statement.

without the jury finding [Appellant] did [p]ossess a [d]eadly [w]eapon during the commission of the crime[?]

Appellant's Brief at 4.[11]

Appellant argues that his right to a jury trial, as guaranteed by the Sixth Amendment to the United States Constitution, was infringed when he was sentenced pursuant to the deadly weapon enhancement without a factual finding by the jury that he possessed a deadly weapon during the commission of the crime. Such a claim challenges the legality of his sentence. *See Commonwealth v. Akbar*, 91 A.3d 227, 238 (Pa. Super. 2014) (citation omitted). As such, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Gentry*, 101 A.3d 813, 817 (Pa. Super. 2014) (citation omitted).

As this Court has recently explained:

In *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], the Supreme Court of the United States held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Stated another way, it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

Subsequently in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the [Supreme Court of the United States] held that any fact that increases the mandatory minimum sentence for a crime

---

[11] To the extent that Appellant challenges the discretionary aspects of his sentence, that claim is waived for failure to include it in his statement of questions presented and failure to develop that position in the argument section of his brief. *See* Pa.R.A.P. 2116; 2119(a).

is an element that must be submitted to the jury and found beyond a reasonable doubt. The **Alleyne** majority reasoned that while **Harris v. United States**, 536 U.S. 545 (2002), limited **Apprendi** to facts increasing the statutory maximum, the principle applied in **Apprendi** applies with equal force to facts increasing the mandatory minimum. This is because it is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime, and it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Thus, this reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

**Commonwealth v. Conaway**, 2014 WL 6678948, *6 (Pa. Super. Nov. 26, 2014) (internal alterations, ellipses, quotation marks, and citations omitted).

In this case, Appellant argues that the deadly weapon enhancement must be considered an element of the offense and, therefore, must be found beyond a reasonable doubt by the jury. Under the Sentencing Code, "When the **[trial] court determines** that [an] offender possessed a deadly weapon during the commission of the current conviction offense, the [trial] court shall consider the [deadly weapon enhancement/p]ossessed [m]atrix[.]" 204 Pa.Code § 303.10(a)(1) (emphasis added). The deadly weapon enhancement/possessed matrix provides longer guideline sentences than the basic sentencing matrix but does not change the statutory maximum sentence or impose a mandatory minimum sentence. Under well-settled Pennsylvania law, sentencing guidelines – in contrast to minimum sentencing provisions – are not mandatory in nature. **See Commonwealth v. Newman**, 99 A.3d 86, 95 (Pa. Super. 2014) (*en banc*). Therefore, as

- 6 -

with all sentencing guidelines, a trial court may sentence outside of the guidelines, *i.e.*, either above or below, as calculated using the deadly weapon enhancement/possessed matrix.

This Court has explicitly rejected the same argument advanced by Appellant and held that a trial court may find that the deadly weapon enhancement applies without offending **Alleyne** or **Apprendi**. **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1270 (Pa. Super. 2014) (*en banc*); **see Commonwealth v. Valentine**, 101 A.3d 801, 813 (Pa. Super. 2014) (Gantman, P.J., concurring)[12] (citation omitted) ("The sentencing court[ ] could apply a deadly weapon enhancement . . . without running afoul of [this Court's **Alleyne** jurisprudence.]"). Accordingly, Appellant's right to a jury trial was not infringed by the trial court's finding that the deadly weapon enhancement applied in this case.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015

---

[12] All three panel members joined President Judge Gantman's concurring opinion.