J-A03011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN MARK GALLAHER | : | |
| | : | |
| Appellant | : | No. 40 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 20, 2022
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000572-2021

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:  **FILED: April 11, 2024**

Jonathan Mark Gallaher appeals from the judgment of sentence of life in prison without the possibility of parole following his convictions for, *inter alia*, second-degree murder and arson. We vacate Appellant's convictions for attempt to commit second-degree murder and otherwise affirm the judgment of sentence.

The trial court summarized the proceedings as follows:

> On April 16, 2021[,] around 9:00 p.m., Glendale Fire Department was dispatched to a house fire located [in] Coalport, Clearfield County, Pennsylvania. The owners of the house, Mark and Lacy Wolfe, were present at the time the fire started; also present in the house were Harold Gustafson and Matthew Troxell. Mark Wolfe, Lacy Wolfe, and Harold Gustafson were able to escape the house without any serious injury. Unfortunately, Matthew Troxell was not able to escape the house, and as a result, he died from smoke inhalation caused by the house fire.
>
> Immediately after the fire, the Pennsylvania State Police (hereinafter "PSP") interviewed Mark and Lacy Wolfe. Mark Wolfe

reported that [Appellant] was present at their house shortly before the fire started. That evening, Mark Wolfe had told [Appellant] th[at] he needed to leave the residence, and the two began arguing. Within five minutes of Mark Wolfe telling [Appellant] to leave, smoke began to fill the house. Mark and Lacy Wolfe were able to escape the house through a window, and Mark Wolfe yelled for Matthew Troxell to get out of the house. Lacy Wolfe corroborated Mark Wolfe's statement and explained that after she escaped through the window, she went back in the house to get her father, Harold Gustafson. During her statement, Lacy Wolfe insisted that [Appellant] was responsible for starting the fire.

Shortly after the fire began, [the] PSP received information that [Appellant] was present at the Central Bar, which is located near the Wolfes' residence. [The] PSP located [Appellant] at Central Bar, and he consented to be interviewed. [Appellant] stated that he had been at the Wolfes' residence that night, but he left their house about forty minutes before the fire started. However, several patrons that were in the bar at the same time as [Appellant] stated that they overheard [Appellant] say that he was responsible for starting the fire. Likewise, [Appellant] told a patron that he did not mean for it to happen, and he did not understand why Matthew Troxell did not get out of the house with the others.

PSP Troop C Fire Marshall, Russel Stewart, conducted an investigation as to the cause of the fire. After conducting an interior examination of the house, Trooper Stewart opined that the left side of the second stair tread was the point of origin for the fire. Additionally, Trooper Stewart opined that the fire was not the result of product or utility failure. Rather, the cause of the fire was a person intentionally causing an open flame device to come into direct contact with flammable liquid located on the stairs.

As a result of the investigation by [the] PSP, a criminal complaint was filed against [Appellant] on April 22, 2021. Appellant was charged with [criminal homicide as to Matthew Troxell; attempted criminal homicide as to the remaining three victims; and multiple counts of arson; aggravated arson; causing or risking catastrophe; aggravated assault; recklessly endangering another person; and criminal mischief]. A preliminary hearing was held on June 7, 2021, and the charges were held for court. The case proceeded with the normal pre-trial

- 2 -

discovery, motions, and hearings; and the jury was ultimately selected November 16, 2021.

On April 14, 2022, [nearly five months after the jury was empaneled, and six days before trial was scheduled to begin, Appellant] wrote and sent a letter to the Clearfield County Clerk of Courts. Within the letter, [Appellant] requested new counsel be appointed. A hearing on Appellant's request was held on April 19, 2022[, the day before trial commenced]. At the hearing, [Appellant] stated that he wanted new counsel because he did not feel like current counsel was prepared for trial. Attorney Chris Pentz was the assistant public defender assigned to [Appellant]'s case at the time of the hearing. Attorney Pentz testified that prior trial counsel recently retired, and he was given the case on March 14, 2022. Despite only receiving the case one month prior to the hearing, Attorney Pentz testified that he met with [Appellant] numerous times and worked to prepare for the trial during that month. Ultimately, th[e] court found that [Appellant]'s intentions for submitting the request for new counsel were dilatory, and the court denied [Appellant]'s request. Additionally, Attorney Pentz was ordered to represent [Appellant] during the [immediately pending] jury trial.

Trial Court Opinion, 3/17/23, at 1-3 (cleaned up).

A jury trial began the next day, on April 20, 2022. Before opening remarks were made, the Commonwealth informed the court that it was not going to proceed on a theory of first-degree murder as to Matthew Troxell, or attempted first-degree murder as to Mark Wolfe, Lacy Wolfe, and Harold Gustafson. Rather, the Commonwealth indicated that it was planning to prove the respective criminal homicide and attempted criminal homicide charges as second-degree murder. In response, Appellant's counsel moved for another continuance, citing the need for additional time to prepare a defense based on what he perceived was an amendment to the criminal information. The court denied the request, noting that the information separately charged either

- 3 -

criminal homicide or attempted criminal homicide as to each victim, which necessarily included all classifications of murder and both voluntary and involuntary manslaughter. Therefore, the court found that the Commonwealth was not seeking to amend the information, but instead to withdraw charges.

At the conclusion of trial, the jury convicted Appellant of nearly all offenses, which included second-degree murder as to Matthew Troxell; criminal attempt to commit murder of the second degree as to Mark Wolfe, Lacy Wolfe, and Harold Gustafson; and aggravated arson as to all of the victims present in the house. The court sentenced Appellant to life imprisonment without the possibility of parole for the murder of Matthew Troxell and imposed an aggregate, consecutive term of twenty-four to eighty years of incarceration for the remaining convictions.[1]

Thereafter, Appellant retained private counsel and filed a timely post-sentence motion, seeking a new trial based upon the denial of his pre-trial continuance request and seeking the right to file supplemental motions upon completion of the transcripts. The trial court entered an order giving Appellant five days to supplement his motion after the transcripts were completed.

---

[1] Since the jury found Appellant guilty of attempt to commit second-degree murder relating to the surviving victims, it did not make a finding of guilty as to the similar charges for attempt to commit murder of the third degree. As will be discussed more in the body of this memorandum, the trial court did not sentence Appellant for the convictions relating to attempted second-degree murder based upon arguments advanced by Appellant at sentencing.

- 4 -

Appellant complied, filing a supplemental post-sentence motion on September 19, 2022, again seeking a new trial in light of a variety of asserted trial court errors. The court held a hearing and considered briefs submitted by the parties. However, before the motion was decided, Appellant filed a *praecipe* requesting that it be denied, for reasons not immediately apparent from the record. The same day, the court denied the motion by operation of law.

This timely appeal followed. The trial court ordered Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he complied. The court further entered a Rule 1925(a) opinion.

Appellant raises the following five issues on appeal:

I. Whether the court erred by denying Appellant's request for a continuance to proceed with privately hired counsel and by denying him privately hired counsel of his choice without performing the related inquiry.

II. Whether the trial court erred in denying trial counsel's two requests for continuance at the start of the trial after the Commonwealth announced [it was] not seeking first[-]degree murder and after the Commonwealth made additional confusing and prejudicial amendments.

III. Whether the court erred and violated Appellant's federal and state due process rights requiring a new trial by erroneously grafting the "attempt" instruction onto the second[-] and third[-]degree homicide instructions[,] which enabled Appellant to be convicted for crimes that do not exist in Pennsylvania[.]

IV. Whether trial counsel was ineffective for allowing Appellant to be convicted of aggravated arson without a special verdict line on the verdict slip requiring the jury to find, beyond a reasonable doubt, that a person was present for each count.

- 5 -

V. Whether trial counsel was ineffective for failing to notice and correct the aforementioned errors in issue[s] III and IV, which permitted Appellant to be erroneously convicted and sentenced.

Appellant's brief at 5 (cleaned up).

Appellant's first two issues concern the trial court's decision to deny his requests for a continuance of trial. We review these claims under the following standard:

It is well-settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court. Further, a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Hernandez*, 230 A.3d 480, 484 (Pa.Super. 2020) (citation omitted).

In his first argument, Appellant more particularly contends that by denying him a continuance, the trial court deprived him of the right to counsel of his choosing. *See* Appellant's brief at 35. In that vein, this Court stated:

Although criminal defendants enjoy the right to choose counsel at their own expense, our Supreme Court has stated that this right is not absolute: Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. At the same time, however, we have explained that a myopic insistence upon

- 6 -

expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

***Hernandez***, 230 A.3d at 484 (cleaned up).

Further, when reviewing a trial court's ruling on a continuance motion to obtain private representation, we consider the following factors:

(1) whether the court conducted an extensive inquiry into the underlying causes of defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current counsel constituted irreconcilable differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time.

***Commonwealth v. Broitman***, 217 A.3d 297, 300 (Pa.Super. 2019) (citing

***Commonwealth v. Prysock***, 972 A.2d 539 (Pa.Super. 2009)).

On appeal, Appellant argues that the court abused its discretion because the court either failed to adequately address several of the ***Prysock*** factors or neglected to recognize that they weighed in favor of granting a continuance. ***See*** Appellant's brief at 27-37. He contends that the court's inquiry was not extensive, Appellant's own counsel determined there were irreconcilable differences between himself and Appellant when he indicated at the hearing that their relationship was bruised beyond mending, counsel made comments demonstrating hostility toward Appellant at the hearing, and the timing of the request was reasonable in light of Attorney Pentz's recent assignment to the case. ***Id***. at 31-36. Appellant concludes that the court "failed to engage in any balancing of . . . Appellant's constitutional right to retain counsel of his choice versus the Commonwealth's right to the swift administration of justice."

- 7 -

*Id*. at 39. He also asserts that denial of his right to counsel here was structural error that does not require a showing of prejudice. *Id*. at 26.

As to its decision to deny Appellant's request in this circumstance, the trial court stated thusly:

> During the hearing on [Appellant]'s *pro se* request for a continuance, [Appellant] asserted that he felt that trial counsel was not prepared. However, Attorney Pentz testified that even though he was recently appointed to the case due to prior counsel's retirement, he was prepared for trial, and had met with [Appellant] multiple times. Additionally, Attorney Pentz was not completely unfamiliar with the case, as he was involved with the case at its commencement, and the case had remained with the Public Defender's Office throughout most of the case. Notably, none of the allegations made by [Appellant] were based on irreconcilable differences between himself and Attorney Pentz. Moreover, this court found Attorney Pentz's testimony of preparedness to be credible. Attorney Pentz has practiced in front of this court for many years, and this court ha[s] never found Attorney Pentz to be unprepared or incompetent.
>
> Most importantly, jury selection was held on November 16, 2021, and the case began one year prior to [Appellant]'s request. However, [Appellant] testified that he had been unsatisfied with the Public Defender's Office for nine months. Yet, [Appellant] did not submit any requests to this court for new counsel [until] the week before trial, nor did he make a complaint regarding counsel at the previous hearings in this case. Therefore, this court believes that [Appellant]'s request was made solely for the purpose of delaying trial. Jury selection had already occurred, the Commonwealth's witnesses were subpoenaed to appear at the trial, and counsel was ready to proceed.

Trial Court Opinion, 3/17/23, at 7-8 (cleaned up).

Upon review, we conclude that the trial court did not abuse its discretion in denying this request for a continuance. The court conducted an inquiry on the record as to Appellant's dissatisfaction with Attorney Pentz, which related

- 8 -

exclusively to Appellant's concern of counsel's preparedness. There was ample testimony supporting the trial court's conclusion that counsel had met with Appellant numerous times, that the meetings were held to address the upcoming trial, and that Attorney Pentz was, in fact, prepared for trial. Therefore, the basis of the disagreement did not constitute "irreconcilable differences." Although Attorney Pentz made a comment at the hearing that his relationship with Appellant was bruised based on what he stated were false allegations made by Appellant at the hearing, it was clear that counsel could continue to represent Appellant. Further, at the hearing, the court went so far as to call a recess so that the Chief Public Defender could review the case file concerning letters Appellant purportedly sent to the office regarding his dissatisfaction with the public defender's office.[2]

The record also supports the court's finding that the request for a continuance was a delay tactic since it was made just days before trial, when a jury had been selected five months before, and Appellant had been aware for weeks that Attorney Pentz had newly taken over the case. This is especially underscored by the fact that, despite Appellant's request arising from the relatively recent appointment of Attorney Pentz and counsel's alleged unpreparedness, Appellant claimed for the first time at the hearing that he

_____

[2] Although Appellant laments that the trial court did not enter these letters into the record at the continuance request hearing, we note that Appellant never sought to do so then or at any later proceeding, including the hearings addressing his post-sentence motion, which challenged the denial of his motion for a continuance.

had been dissatisfied with the office for nine months. As the court stated, Appellant did not raise this contention at any prior proceedings, including jury selection.

As to the remaining **Prysock** factors, the trial court inquired as to whether new, privately retained counsel entered his appearance and was informed by the Commonwealth that it was unsure and that private counsel had only "indicated that he was picking up the case," implying he was not yet retained. N.T. Argument, 4/19/22, at 9. Further, while there was no direct testimony regarding how long it would take new counsel to prepare for trial, Attorney Pentz indicated his belief that no one could be prepared to jump in and handle trial the next day, which is supported by the numerous serious charges Appellant faced. Finally, we note that the court did not discuss whether the parties had requested prior continuances, but we do not find that the failure to address that factor alone warrants a different outcome.[3]

Based on the inquiry conducted by the court and the reasons for its denial, we hold that it did not abuse its discretion. **Compare Broitman**, 217 A.3d at 300-01 (concluding that the trial court did not abuse its discretion in denying a continuance request when it was made on the eve of trial, which had been scheduled two months prior; the court conducted an inquiry into the defendant's dissatisfaction; it determined that the request was not made in a reasonable time; and newly retained counsel was not immediately prepared

---

[3] Our independent review of the certified record shows that Appellant requested and was granted one continuance relating to jury selection.

to proceed with trial); *with Commonwealth v. Mackrides*, 255 A.3d 1269, 2021 WL 2029820, at *4 (Pa.Super. 2021) (non-precedential decision) (finding that the court abused its discretion in denying a motion to continue when "the court did not inquire at all, let alone extensively, into Mackrides'[s] dissatisfaction with trial counsel or whether his dissatisfaction with counsel constituted irreconcilable differences and did not discuss the number of prior continuances that had been granted in the matter").

In his next issue, Appellant argues that the court erred in denying his continuance request lodged at the beginning of trial when the Commonwealth stated its intention to prove criminal homicide and attempted criminal homicide convictions under the classification of murder of the second-degree. *See* Appellant's brief at 43-52. He asserts that the continuance should have been granted because "[t]here can be no dispute that the defense of first and second-degree murder are vastly different," and further because some of the counts did not exist pursuant to Pennsylvania law, such as attempt to commit murder of the second degree. *Id*. at 45. Appellant claims that counsel could not have been expected to defend against charges that were "invented on the spot." *Id*. at 46. Further, he contends there was requisite prejudice stemming from the fact that Appellant was ultimately convicted of fictional homicide charges, *i.e.*, criminal attempt to commit murder of the second degree. *Id*. at 49.

In rejecting this claim, the trial court noted that the criminal information charged Appellant with criminal homicide, which included all degrees of

murder, as well as both voluntary and involuntary manslaughter. *See* Trial Court Opinion, 3/17/23, at 8. Further, the Commonwealth's request merely sought to withdraw the charges of first-degree murder and involuntary manslaughter, and did not add any new charges. *Id*. at 9. Accordingly, the court opined that the Commonwealth's request had no bearing on the factual basis for the charges or the witnesses to be called, and therefore there was no need for a continuance to prepare a defense.[4] *Id*.

We find no abuse of discretion with the court's decision. As it correctly indicated, criminal homicide encompasses murder of both the first and second degrees. *See* 18 Pa.C.S. § 2501 (defining criminal homicide and indicating that it shall be classified as murder, voluntary manslaughter, or involuntary manslaughter). Further, we have determined that "[a]n information need not specify a degree of murder or the degrees of manslaughter in order to sustain the verdict of second[-]degree murder." *Commonwealth v. Chambers*, 852 A.2d 1197, 1199 (Pa.Super. 2004) (citation omitted). Here, Appellant was charged with criminal homicide and numerous other felonies, including arson and aggravated arson. Therefore, he had adequate notification that he faced a potential conviction for second-degree murder. *See Commonwealth v. Conaway*, 105 A.3d 755, 764 (Pa.Super. 2014) ("The purpose of an

---

[4] The court also acknowledged that even though Appellant may have been improperly convicted of the charges of criminal attempt to commit second-degree murder, he was not prejudiced because he was not sentenced on those convictions. *See* Trial Court Opinion, 3/17/23, at 9. We address those convictions *infra*.

information or an indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act." (cleaned up)). Since the Commonwealth's withdrawal of charges did not amount to an amendment, or otherwise affect the defenses applicable to the counts of which he was properly on notice, the court did not err in denying Appellant's continuance request.

Appellant next argues that he is entitled to a new trial because the court erroneously instructed the jury that it could find him guilty of criminal attempt to commit murder of both the second and third degrees as to victims Mark Wolfe, Lacy Wolfe, and Harold Gustafson. *See* Appellant's brief at 50-56. This court has stated:

> In examining jury instructions, our standard of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. Moreover, in reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury.

*Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa.Super. 2020) (cleaned up). Further, "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa.Super. 2010) (cleaned up).

Citing the trial transcript, the trial court concluded that this issue was waived because counsel never contemporaneously lodged an objection to these jury instructions. **See** Trial Court Opinion, 3/17/23, at 10 (citing N.T. Trial, 4/22/22, at 161).[5] The record confirms that Appellant never objected to the instructions in question. Therefore, we agree with both the trial court and Appellant that this challenge is waived on that basis. **See Moury**, 992 A.2d at 178.

However, to the extent that Appellant's arguments implicate that his three convictions for attempt to commit second-degree murder are improper since they are not cognizable offenses under Pennsylvania law, we agree. **See Commonwealth v. Geathers**, 847 A.2d 730, 734 (Pa.Super. 2004) (stating that "there simply is no such crime as attempted second . . . degree murder."); **Commonwealth v. Brown**, 276 A.3d 244, 2022 WL 792169, at *5 (Pa.Super. 2022) (non-precedential decision) (citing **Geathers** with approval and indicating that attempted second degree murder is not a viable offense under the law of the Commonwealth). Accordingly, we vacate the three convictions for attempt to commit second-degree murder. **See**, **i.e.**,

---

[5] Appellant concedes in his brief that counsel did not object to the challenged instructions. **See** Appellant's brief at 52 (stating that "Appellant also recognizes that jury instruction issues are waived unless objected to by counsel" and that here "there was no objection raised by trial counsel"). Nonetheless, he devotes the remainder of the argument in this section of his brief to articulating why trial counsel was ineffective for failing to object on this basis, instead of the argument section pertaining to the stated question of whether counsel was ineffective for waiving this issue. **Id**. at 52-56. We address Appellant's claims of ineffective assistance of counsel below.

*Commonwealth v. McVicker*, 2019 WL 4392484, at *7 (Pa.Super. 2019) (non-precedential decision) (vacating a conviction for attempted third-degree murder because that crime does not exist). However, since the trial court did not impose any sentence relating to these convictions, and therefore the sentencing scheme remains unaffected, we need not remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa.Super. 2006) (holding that where this Court can vacate an illegal sentence without upsetting the trial court's overall sentencing scheme, it need not remand for resentencing).

In his final two claims, Appellant asserts the ineffectiveness of trial counsel. Specifically, he faults counsel for failing to object to the verdict slip or the court's instructions as to aggravated arson, since there was no request that the jury make a factual finding as to whether persons were present in the residence with respect to that offense. Additionally, he maintains that counsel rendered ineffective assistance when he did not object to the court's instructions relating to attempt to commit second and third-degree murder, as discussed above.

This Court has summarized the appropriateness of reviewing such ineffective assistance allegations on direct appeal as follows:

> Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. *See Commonwealth v. Holmes*, 79 A.3d 562, 577-80 (2013). Instead, such claims are to be deferred to PCRA review. However, our Supreme Court has recognized three exceptions to the general rule. In *Holmes*, the Court held that a trial court has discretion to address ineffectiveness claims on direct review in cases where (1) there are extraordinary circumstances in which trial counsel's

- 15 -

ineffectiveness is apparent from the record and "meritorious to the extent that immediate consideration best serves the interests of justice;" or (2) "there is good cause shown," and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence. More recently, our Supreme Court adopted a third exception, which requires trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review.

*Commonwealth v. James*, 297 A.3d 755, 760-61 (Pa.Super. 2023) (cleaned up).

Our review of the record confirms that Appellant has not expressly waived his ability to seek subsequent PCRA review of his conviction and sentence, nor has he asserted anywhere that he is statutorily precluded from PCRA relief. Concerning the "extraordinary circumstances" exception, the trial court did not find any of Appellant's ineffectiveness claims meritorious or that they warranted immediate consideration by this Court. We agree. To the extent Appellant's claims rest upon errors regarding the trial court's instructions for attempt to commit third-degree murder, we reiterate that Appellant was not convicted of those charges. Likewise, if his ineffectiveness claims rely upon the convictions for attempt to commit second-degree murder, we have hereby vacated those convictions. Appellant therefore has not demonstrated that "immediate consideration" of his assertions of trial counsel's ineffectiveness "best serves the interests of justice." *James*, 297 A.3d at 761.

Accordingly, since Appellant has not satisfied any of the above exceptions, these claims are dismissed without prejudice and are to be

deferred to collateral review. **See Holmes**, 79 A.3d at 563 ("[W]e hold that [the] general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel[.]").

In sum, we vacate Appellant's three convictions for attempt to commit second-degree murder. As Appellant was never sentenced on those convictions, we need not remand for resentencing. With regard to the remainder of Appellant's claims, he has not otherwise given us cause to disturb his judgment of sentence.

Convictions for attempt to commit second-degree murder vacated. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/11/2024