J-A05039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS EUGENE WALTEMYER, | |
| Appellant | No. 975 EDA 2015 |

Appeal from the Judgment of Sentence November 18, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000953-2013

BEFORE: OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 08, 2016**

Appellant Thomas Eugene Waltemyer appeals the judgment of sentence entered on November 18, 2014, by the Honorable Jonathan Mark in the Court of Common Pleas of Monroe County. Following a review of the record, we affirm.

The trial court aptly detailed the facts and procedural history herein as follows:

> The charges in this case stem from incidents of domestic violence in which [Appellant] assaulted his wife, Anna Airepetian.[1] On November 30, 2012, [Appellant] and Ms. Airepetian were having a dispute via text message where insults were being hurled at one another. After returning to the house the couple shared, Ms. Airepetian went to sleep in her son's bedroom. There, Defendant attacked Ms. Airepetian by grabbing her hair and repeatedly slamming her head into a wall.

---

[1] In the record and trial transcripts, the victim's name is spelled Airapetian.

*Former Justice specially assigned to the Superior Court.

Defendant continued his attack by choking Ms. Airepetian. Following this attack, Ms. Airepetian attempted to flee but after things had briefly calmed down, she returned to the house for her son.

The next day, while [Appellant] was out hunting, Ms. Airepetian attempted to gather some items and leave the house. While she was searching for her cell phone, [Appellant] returned to the house. The two began arguing in the kitchen, and [Appellant] placed Ms. Airepetian in a martial arts-style hold and slammed her to the ground again.

After this second incident, Ms. Airepetian left the house and went to the Lehighton Barracks of the Pennsylvania State Police. There, she reported to troopers what had happened, and the police took pictures of her injuries including bruising around her neck. [Appellant] came to the police barracks where he was arrested and charged with Aggravated Assault, Simple Assault, and Harassment.

After much delay due to defense counsel's involvement in a long federal criminal proceeding in New Jersey, a jury trial was convened in this case on August 19, 2014.

Immediately before the trial began, a hearing ("Suppression Hearing") was held on a motion in limine filed by the Commonwealth and a motion to suppress filed by [Appellant]. (N.T., 8l19/2014, pp. 2- 1). During this hearing, the Commonwealth called one of the arresting state troopers, a defense exhibit was identified, and the attorneys argued their respective positions. At the conclusion of the hearing, we issued an order denying [Appellant's] motion to suppress and grating [sic] in part and denying in part the Commonwealth's motion in limine. (*Id*. at 35-36; Order dated August 19, 2014). We ruled that [Appellant] would not be allowed to present evidence of medications that Ms. Airepetian was allegedly taking for supposed mental health issues purportedly relating to an abortion. We also barred any mention of the alleged abortion. (*Id*. at 30-40; Order dated August 19, 2014). In doing so, we summarized our reasoning on the record. (*Id*. at 25-26, 30-34, and 39-40). We incorporate our on-record statements and reasoning into this opinion by reference.

After the hearing ended, the trial commenced. On August 21, 2014, the jury found [Appellant] guilty of simple assault and harassment. The jury was a hung [sic] on the Aggravated Assault charge. After the verdict was entered, a sentencing hearing was scheduled and a Pre-Sentence Investigation ("PSI") report was ordered.

On November 18, 2014, after a continuance granted at the request of [Appellant], the sentencing hearing was convened. At the conclusion of the hearing, [Appellant] was sentenced to one to two years, less a day, in the Monroe Country Correctional Facility, a sentence in the standard range.[1]

At the sentencing hearing, [Appellant] did not contest any of the information contained in the PSI report, including his classification as a Repeat Felon for sentencing purposes. (N.T., 11/18/2014, pp. 3-4 and 22-23), [Appellant] and his attorney both addressed the Court. In addition, they presented Exhibits, including evaluations that were performed on [Appellant] in New York as part of a custody case, which were admitted and reviewed by the Court before sentence was imposed. In summary, [Appellant] and his attorney asked the Court for leniency and a sentence that would deviate below the mitigated range on the basis that most of [Appellant's] history that earned him the Repeat Felon status occurred more than twenty years ago while he was a young adult. (*Id*. at 2-15).

The assistant district attorney also addressed the Court and introduced exhibits. He asked that we adopt the sentence of eleven and one-half to twenty-three months recommended in the PSI report, pointing to the facts of the case, the impact on the victim, and [Appellant's] Repeat Felon status. (*Id*. at 15-22).

Thereafter, we informed [Appellant] of the information we considered and explained our reasons for imposing the sentence we ordered. We advised [Appellant] that the sentence was based on the record and file in this case, the facts presented during trial, the comprehensive PSI report that had been prepared by our Probation Office, the statements made by [Appellant] his attorney, and the assistant district attorney during the sentencing hearing, the exhibits presented at time of sentencing, and the applicable sentencing laws, rules, and guidelines. We then stated our reasons on the record. (*Id*. at 22-29; PSI Report). We incorporate our on- record statements and reasoning into this opinion by reference.

On November 20, 2014, [Appellant] filed a post-sentence motion raising the same issues that he presents in this appeal. A hearing on the motion was convened on March 30, 2015. At the conclusion of the hearing, we entered an order denying the motion. (NT., 3/30/2015, pp. 30-31; Order dated March 30, 2-15). During the hearing, we articulated our reasons for denying the motion on the record. In doing so, we referenced and incorporated the rulings and reasoning we expressed during the

Suppression Hearing, the trial, and the sentencing hearing. (N.T., 3/30/2015, pp. 2-3, 11-32; Order dated March 30, 2015). We incorporate our on-record statements and reasoning into this Opinion by reference.

_____
[1][Appellant] is a Repeat Felon for sentencing purposes. As a result, the standard range sentence is one to two years, a state sentence that is also the statutory maximum. If imposed, this sentence would have required [Appellant] to serve his time in a state correctional facility. Since [Appellant] was sentenced to one year less a day to two years less a day, to be served in a county correctional facility, the sentence was technically a mitigated range sentence.

Trial Court opinion, filed 6/2/15, at 1-4.

On April 6, 2015, Appellant filed his notice of appeal, and on that same date the trial court ordered Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied and raised therein seven assignments of error.

In his appellate brief, Appellant presents the following two questions for our review:

A.

Whether the trial court rulings and jury instructions which served to permit the jury to render a guilty verdict on the offenses charged in the Information based on uncharged criminal conduct deprived Appellant of his constitutional rights to not be convicted for [sic] an offense for which he was not charged, and his constitutional rights to not be convicted of any offense on a less than unanimous verdict?

B.

Whether the trial court's guideline sentence of 12 to 24 months (less one day) based primarily on Appellant's criminal history category of RFEL (repeat felon) which category was based on 24 year old convictions was unreasonable and inappropriate, especially in light of highly favorable individual factors to which the court failed to give due weight and consideration?

Brief for Appellant at 3.

Appellant first maintains the trial court unlawfully amended or allowed the Commonwealth to unlawfully amend the Criminal Information and erred in failing to instruct the jury to disregard any evidence related to the incident that occurred in the couple's kitchen on December 1, 2012. Appellant stresses that he does not challenge the validity of the Information but rather the trial court's instruction to the jury. He maintains that as the Criminal Information solely charged him with the "bedroom" assault, the trial court's instruction directing the jury to consider the "kitchen" assault as a basis for finding Appellant guilty deprived him of his due process right to fair trial and a unanimous verdict on the crimes charged in the information in that it had effectively added three additional charges to the information. Brief for Appellant at 6, 10, 20. Appellant states that in viewing this issue as one which challenges the validity of the Information, the trial court's analysis in its Pa.R.A.P. 1925(a) opinion is illustrative of its "utter failure to understand the issue raised by Appellant at trial and on appeal." Brief for Appellant at 20-21. Upon our review of the record, we disagree.

In **Commonwealth v. Conaway**, 105 A.3d 755 (Pa.Super. 2014), this Court recently reiterated the well-established purpose of an Information or an Indictment as follows:

> The purpose of an [i]nformation or an [i]ndictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act.

- 5 -

> ***Commonwealth v. Ohle***, [ ] 470 A.2d 61, 73 (Pa. 1983); ***Commonwealth v. Diaz***, [ ] 383 A.2d 852 (Pa. 978); ***Commonwealth v. Rolinski***, [ ] 406 A.2d 763 (Pa. Super. 1979). An [i]ndictment or an [i]nformation is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. ***Commonwealth v. Bell***, [ ] 516 A.2d 1172, 1177 (Pa. 1986); ***Commonwealth v. Ohle***, [ ] 470 A.2d 61, 73 (Pa. 1983); ***Russell v. United States***, 369 U.S. 749[ ] (1962); [*s*]*ee* Pa.R.Crim.P. 225(b). This may be accomplished through use of the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." ***Hamling v. United States***, 418 U.S. 87[ ](1974), quoting, ***United States v. Carll***, 105 U.S. 611, 612[ ] ( [1881]). *Id.* at 764, citing ***Commonwealth v. Alston***, 651 A.2d 1092, 1095–96 (Pa. 1994). Moreover, while the information shall contain "the official or customary citation of the statute and section thereof ... that the defendant is alleged to have violated [,] ... the omission of or error in such citation shall not affect the validity or sufficiency of the information." ***Id.*** at (C).

*Id*. at 764 citing ***Commonwealth v. Alston***, 651 A.2d 1092, 1095-96 (Pa. 1994).

Herein, the Criminal Complaint provided in pertinent part:

**Aggravated Assault**
Acts of the accused associated with this Offense:

IN THAT, on or about said date, [APPELLANT] did attempt to cause or did intentionally, knowingly or recklessly cause serious bodily injury to his wife (Anna Levonauna AIRAPETIAN) under circumstances manifesting extreme indifference to the value of human life, that is to say [APPELLANT] did grab the victim by the hair and smash her head against a wall causing a lump behind the right ear. [APPELLANT] then through [sic] the victim on the ground and was choking her causing her to temporarily lose [sic] conciousness [sic], in violation of section 2702(a)(1) of the PA Crimes Code.

\*\*\*

**Simple Assault**
Acts of the accused associated with this Offense:

IN THAT, on or about said date, [APPELLANT] did attempt to cause or did intentionally, knowingly or recklessly cause serious bodily injury to his wife (Anna Levonauna AIRAPETIAN) under circumstances manifesting extreme indifference to the value of human life, that is to say [APPELLANT] did grab the victim by the hair and smash her head against a wall causing a lump behind the right ear. [APPELLANT} then through [sic] the victim on the ground and was choking her causing her to temporarily lose [sic] conciousness [sic], in violation of section 2701(a)(1) of the PA Crimes Code.

\*\*\*

**Harassment**
Acts of the accused associated with this Offense:

IN THAT, on or about said date, [APPELLANT], with intent to harass, annoy or alarm another person, namely (VICTIM), did strike, shove kick or otherwise subject such other person to physical contact, or did attempt or threaten to do the same, in that [APPELLANT] did grab the victim by the hair and smash her head against a wall causing a lump behind the right ear. [APPELLANT] then through [sic] the victim on the ground and was choking her causing her to temporarily lose conciousness [sic], in violation of Section 2709(a)(1) of the PA Crimes Code.

Criminal Complaint, 12/1/12, at 3-4.

The Amended Criminal Information was filed on May 28, 2013, and states:

Count 1

On or about December 1, 2012 in the County of Monroe, Eldred Township, Pennsylvania, [Appellant] attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life, to wit: struck Anna Airapetian, threw her against a wall, repeatedly struck her head against a wall and choked her.

- 7 -

AGGRAVATED ASSAULT
18 Pa.C.S. § 903(A)(1)
F1

Count 2

On or about December 1, 2012 in the County of Monroe, Eldred Township, Pennsylvnaia,[sic] [Appellant] attempted to cause or intentionally, knowingly or recklessly caused bodily injury to another, to wit:  struck Anna Airpetian, [sic] threw her against a wall, repeatedly struck her head against a wall and choked her.

SIMPLE ASSAULT
18 Pa.C.S. § 2701a1
M2

Count 3

On or about December 1, 2012 in the County of Monroe, Eldred Township, Pennsylvania, [Appellant] with intent to harass, annoy or alarm another person struck, shoved, kicked or otherwise subjected said person to physical contact, or attempted or threatened to do the same, to wit:  struck Anna Airpetian, [sic] threw her against a wall, repeatedly struck her head against a wall and choked her.

HARASSMENT/STRIKE, SHOVE, KICK, ETC.
18 Pa.C.S. § 2709A1
S

Amended Criminal Information, filed 5/28/13.

In the Criminal Complaint, Appellant was charged with one count each of the aforementioned crimes for events "on or about" November 30, 2012, and the Criminal Information specifically referred to events "[o]n or about December 1, 2012," the date upon which the encounter occurred in the kitchen. The allegations as set forth therein provided Appellant with sufficient notice to prepare a defense at trial in that each element of the

crime was explained and the citations for the charged crimes were listed. *Conaway*, *supra*. Indeed, both the record and Appellant's appellate brief are replete with evidence that he was apprised of the charges he needed to defend at trial.

From the outset of the case, the Commonwealth represented that Appellant's charges arose following events that occurred on the evening of November 30, 2012 and on the morning of December 1, 2012. A review of the transcripts from the preliminary hearing held on April 15, 2013, reveals Appellant never objected to Ms. Airapetian's testimony concerning the December 1, 2012, confrontation. To the contrary, defense counsel repeatedly referenced the assaults in terms of two incidents and even asked Ms. Airapetian to clarify that her testimony described two, separate incidents. N.T., 4/15/13, at 12, 14. Similarly, while he filed an omnibus pretrial motion on January 22, 2014, Appellant challenged therein only certain incriminating statements, not any anticipated reference to two, separate incidents at trial. He also never averred such testimony would result in an unlawful amendment to the Information in violation of his federal or state constitutional due process rights.

Moreover, in his appellate brief Appellant explains that as is evident in his opening statement and closing argument at trial, his theory of the case was that Ms. Airapetian was emotionally unstable during the time which preceded "the incidents" on November 30, 2012, and December 1, 2012,

and it was that instability which provoked the "confrontations" on those dates. In this regard, he specifically states that the contact between Ms. Airapetian and him on December 1, 2012, was the result of his attempting to restrain her when she attacked him with a meat tenderizer. Brief for Appellant at 5-6. Furthermore, Appellant acknowledges that he asked the trial court to provide the jury with a self-defense instruction for the assault in the kitchen on December 1, 2012. Brief for Appellant at 9 citing N.T., 8/21/14, at 2-8.

Furthermore, at trial Appellant vigorously cross-examined Ms. Airapetian regarding both encounters, presented his own testimony and that of other witnesses concerning both assaults, and introduced a physical exhibit related to the kitchen assault- a meat tenderizer. It was not until both sides had rested that Appellant raised a constitutional challenge to the trial court's jury instruction. In fact, he acknowledges in his brief that "following the close of evidence defense counsel requested the court prohibit the Commonwealth attorney from arguing the facts of the second incident . . . ." Brief for Appellant at 15-16.

This Court is hard pressed to discern how Appellant can both admit that it was he who requested that the trial court provide a self-defense instruction for the December 1, 2012, confrontation in the kitchen (which the trial court accordingly supplied) and at the same time challenge that instruction as creating an illegal amendment of the Information in violation

of his right to due process. It appears that it is Appellant who has misconstrued the essence of the first claim he has presented for this Court's review, for in arguing it is not one of notice, he ignores that this is precisely the purpose a criminal information serves. Clearly, from the outset of the matter the two confrontations were treated as part of the same incident that led to the three counts initially brought against Appellant; thus, he was apprised of and vigorously defended his actions on November 30-December 1, 2012, which led to those charges.[2] Accordingly, we find that Appellant was provided with sufficient notice to prepare a defense to the crimes of aggravated assault, simple assault and harassment; therefore, his first issue is meritless.

Appellant's second claim presents a challenge to the discretionary aspects of his sentence, and one's right to appeal the discretionary aspects of his sentence is not absolute. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa.Super. 2004), *appeal denied,* 860 A.2d 122 (Pa. 2004). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence

---

[2] It is noteworthy that the jury was hung as to the most serious charge of aggravated assault.

appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220 (Pa.Super. 2011) (footnotes and citation omitted).

Herein, Appellant filed a timely notice of appeal as well as a timely post-sentence motion and has included the requisite Statement of Reasons for Allowance of Appeal from Discretionary Aspects of Sentence pursuant to Rule 2119(f) in his appellate brief. Brief for Appellant at 21-23. Therefore, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence, and we may proceed to determine whether he has presented a substantial question that his sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa.Super. 2013), *appeal denied,* 81 A.3d 75 (Pa. 2013).

> A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the [sentencing] code or is contrary to the fundamental norms which underlie the sentencing process. We determine whether a particular case raises a substantial question on a case-by-case basis. Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists.

***Commonwealth v. Christine***, 78 A.3d 1, 10-11 (Pa.Super. 2013) (internal quotations and citations omitted).

Herein, in both his "Motion for Post Verdict Relief and/or for Reconsideration of Sentence" and in his "Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B)" Appellant argues simply that:

Considering the characteristics of the Appellant and the circumstances of the Appellant's conduct in this matter, the Court's sentence is excessive as a matter of law and fact and imposed a punishment significantly greater than necessary to accomplish the purposes of sentencing.

*See* Motion for Post Verdict Relief and/or for Reconsideration of Sentence at 4; Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B) at ¶ 5.

In his Rule 2119(f) statement, Appellant contends that his sentence, which had been within the range of that allowable under the Sentencing Guidelines, was unreasonable and inappropriate because it did not sufficiently consider Appellant's prior criminal record and personal situation; he was characterized as a repeat felon based upon offenses he had committed twenty-four years earlier when he was eighteen years old, a misdemeanor assault in 1990, and tattooing a minor (M-3) in 1997). Appellant further avers "the guideline range greatly overstated the significance of [Appellant's] criminal history-so much so that the Presentence Report recommended sentencing in the mitigated range." Brief for Appellant at 22-23.

This Court has repeatedly held that allegations the trial court failed to consider particular circumstances or factors in an appellant's case do not raise a substantial question as they go to the weight accorded to various sentencing factors. ***Commonwealth v. Griffin***, 65 A.3d 932, 936 (Pa.Super. 2013); ***accord Commonwealth v. Cannon***, 954 A.2d 1222,

1228–1229 (Pa.Super. 2008). In addition, this Court has held that an argument that the trial court failed to consider certain mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. ***Commonwealth v. Ratushny***, 17 A.3d 1269, 1273 (Pa.Super. 2011); ***accord Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010). Furthermore, Appellant does not set forth the specific provision of the Sentencing Code or the fundamental norm underlying the sentencing process the trial court allegedly violated. Consequently, Appellant does not appear to have raised a substantial question for our review. ***See Christine, supra*** (compare ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa. Super. 2003)(finding a contention that a trial court misconstrued a prior record score raises a substantial question)).

Assuming, *arguendo,* Appellant has presented a substantial question warranting our review, he would not be entitled to relief. Despite the recommendations set forth in the Sentencing Guidelines, trial courts retain broad discretion in sentencing matters and may sentence a defendant outside of those Guidelines. "The only line that a sentence may not cross is the statutory maximum sentence." ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1119 (Pa. 2007) (citation omitted). In addition, the trial court had the benefit of a presentence investigation report herein, and in such cases, this Court has stated that "we can assume the sentencing court was aware of

relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Moury***, ***supra*** at 171.

The trial court handed down a sentence within the standard range of the sentencing guidelines and in doing so fully and adequately set forth the reasons for its sentence. ***See*** N.T., 11/18/14, at 22-29; N.T., 3/30/15, at 24-27; Trial Court Opinion, filed 6/9/15 at 13-20. Thus, even were we to reach the merits of the issue, we would find the trial court did not abuse its discretion. ***See Commonwealth v. Austin***, 66 A.3d 798, 809-10 (Pa.Super. 2013). For the foregoing reasons and after a careful review of the entire record, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/2016