J-S56010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUDDIE BELLMAN | : | |
| | : | |
| Appellant | : | No. 2210 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006955-2017,
MC-51-CR-0019439-2017

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    Filed: April 8, 2021

Appellant, Luddie Bellman, appeals from the February 19, 2019 judgment of sentence of an aggregate term of 13 to 26 years' imprisonment, imposed after he was convicted of one count each of third-degree murder,[1] carrying a firearm without a license,[2] carrying a firearm on a public street in Philadelphia,[3] and possessing an instrument of crime ("PIC"),[4] and two counts

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 6106.

[3] 18 Pa.C.S. § 6108.

[4] 18 Pa.C.S. § 907(a).

of violations of the Uniform Firearms Act ("VUFA"), possession of a firearm by a prohibited person.[5]  Appellant challenges the jury instructions regarding the justification of the use of deadly force, contests the sufficiency of the evidence to sustain his convictions, and alleges the verdict is against the weight of the evidence.  After careful review, we affirm.

The trial court provided the following summary of the relevant facts of this matter in its Pa.R.A.P. 1925(a) opinion:

> On the afternoon of June 30, 2017, Lacricia Hines and her cousins[,] Frank Stewart [("Stewart")] and Edward Neal [("Neal")], the decedent, went to visit Lacricia's mother, Patricia Hines, who was working at a flea market near the intersection of 25th Street and Lehigh Avenue in Philadelphia.  Patricia's fiancé, [Appellant], owned the flea market[,] and Patricia ran its day[-]to[-]day operations.  Throughout the course of the afternoon, [Appellant] stopped by the flea market multiple times to check on how everything was going.  Eventually [he] came back to break down the flea market and close for the day.  During this time, [Appellant] got into an argument with Patricia and called her a bitch.  After hearing [him] call his aunt a bitch, Stewart confronted [Appellant] and told him he was being disrespectful.  The two men had a brief argument[,] and then Patricia and Lacricia told Stewart to walk away.  Shortly thereafter, [Appellant] left in his truck[;] Neal, Stewart[,] and Lacricia left in Lacricia's Jeep[;] and Patricia began walking to the home she shared with [Appellant at] 2413 Oakdale Street, which is approximately half a block away from the flea market. Before they left, Patricia told Lacricia that she wanted [Lacricia] to take [her] to [Lacricia's] aunt's house.  They agreed

---

[5] 18 Pa.C.S. § 6105 (VUFA § 6105).  The VUFA § 6105 charges required the Commonwealth to prove Appellant's prior criminal conviction, which disqualified him from owning a gun, as an element of the offense. Thus, the trial court severed these charges, and the jury heard the evidence regarding them after it rendered a verdict on all of the other charges.  **See** Trial Court Opinion ("TCO"), 10/16/19, at 1 n.1.

that Patricia would walk to her home and pack her things, and Lacricia would later pick her up.

Before going to Patricia and [Appellant's] house, Lacricia, Neal, and Stewart went to another cousin's house on Cleveland Street. On the way to their cousin's house, the three discussed their concern about Patricia's safety because of the way [Appellant] had treated her. After spending approximately 20 minutes at their cousin's house, Lacricia, Neal[,] and Stewart left and headed for [Appellant] and Patricia's house.

When they arrived at the house, Lacricia parked her Jeep across the street[,] … went in[to] the house by opening an unlocked screen door[,] and preced[ed] through an already open[ed,] inside door. Neal and Stewart remained in the Jeep. Lacricia went upstairs to her mother's bedroom to check on how she was doing and to see if she was done packing. [Appellant] was not in the home. Shortly after Lacricia entered the home, Stewart left the Jeep, leaving Neal alone in the car. Then Stewart went on the porch and knocked on the screen door. From upstairs, Patricia yelled for Stewart to come in. Stewart made his way upstairs to use the bathroom and subsequently went into Patricia's room where she was still packing her clothes. Both Patricia and Lacricia told Stewart that he should leave the house before [Appellant] got there.

As Stewart was walking down the stairs to leave the house, [Appellant] walked through the front door into the living room. When [Appellant] saw Stewart, he asked him who he was and told him to get out of his house. In response, Stewart told [Appellant] that he was not leaving without Patricia and Lacricia. [Appellant] again told Stewart to leave, and Stewart gave the same response. Overhearing the two men from upstairs, Lacricia went to the middle of the steps and told Stewart to leave. In response, Stewart began to walk past [Appellant] towards the door. As Stewart walked by him, [Appellant] pushed him towards the door. Stewart told [Appellant] not to push him, but [Appellant] pushed him again. In response, Stewart punched [Appellant] on the right side of his face. Then the two men engaged in a fistfight. Meanwhile, Lacricia had come downstairs and sat on the couch, and Neal had left the Jeep and made his way onto the porch. Neal came in through the open front door and attempted to break up the fight, which was occurring in the living room near the front door. Neal grabbed Stewart, who was 5 feet and 3 inches tall and weighed 156 pounds, and pushed him up against the wall adjacent

- 3 -

to the front door. [Appellant] began to back up into the dining room, which was connected to the living room, and pulled out a .38 revolver from the back of his pants. When [he] stopped backing up, he stood in the living room near the drum set and fired five shots in the direction of Stewart and Neal. Neal, who was now standing in the middle of the living room between Stewart and [Appellant], was struck by two bullets in his right upper arm and the right side of his neck.

After the gunshots stopped, Lacricia ran back upstairs to her mother's bedroom. Stewart saw Neal fall to the ground and then made his way towards [Appellant]. Stewart put [Appellant] in a chokehold and forced the gun out of [his] hand. Stewart then ran outside on the porch and threw the gun onto the middle of the street. As Stewart was running out the door with the gun, [Appellant] began to run upstairs and told Stewart that he had "another one." [Appellant] went into Patricia's room and told her[,] "bitch, I'mma kill you next." While [Appellant] made his way to the closet in the room, Lacricia ran downstairs and out of the house.

Meanwhile, Stewart had come back inside the house to check on Neal. Stewart's cell phone was not working properly so he ran back outside and yelled for someone to call an ambulance. Then he saw [Appellant] walk out the door to the porch and hand an unknown object to a white male. [Appellant] and the white male then walked to [Appellant's] truck, which was parked approximately 4 houses away from [Appellant's] house, got in, and turned on the ignition[,] but did not drive away.

Shortly thereafter, officers arrived on the scene and entered [Appellant's] house. They found Neal's body[,] … loaded it into a police car[,] and rushed him to Temple Hospital, where he died sometime thereafter. The bullet that had struck Neal's arm went through his torso and perforated one of his ribs, his right lung, and his heart. The medical examiner determined that the cause of death was the gunshot wound.

When officers arrived, Stewart pointed to [Appellant's] truck and told them that the man responsible for shooting his cousin was sitting in it. Officers approached the truck[,] and [Appellant] was placed under arrest. Officers discovered a .22 revolver inside of a flowerpot behind [Appellant's] truck.

TCO at 3-7 (citations to record and footnotes omitted).

At trial, the Commonwealth presented testimony from two eyewitnesses, Stewart and Lacricia; the medical examiner, Dr. Lindsay Simon; several police officers; and experts in DNA analysis and gunshot residue. Appellant testified on his own behalf and presented testimony from Officer Raymond Lacey, who responded to the scene, and from Appellant's girlfriend, Khea Phillips. Appellant conceded to the use of deadly force, which resulted in Neal's death, but claimed that he believed he was in imminent danger and fired his weapon in self-defense. At the conclusion of the trial, the jury found Appellant guilty of third-degree murder, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and PIC. In a bifurcated proceeding, the jury also found Appellant guilty of VUFA § 6105.

On February 19, 2019, the trial court sentenced Appellant to an aggregate term of 13 to 26 years' imprisonment. Appellant filed a timely motion for reconsideration, which was denied by the trial court on June 4, 2019. On July 3, 2019, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Rule 1925(b) concise statement of matters complained of on appeal.

Herein, Appellant presents the following questions for our review:

1. Did the trial court abuse its discretion by reaching a conclusion which overrode and misinterpreted the law, or by an omission in jury charges that amount to fundamental error?

2. Was the evidence sufficient to sustain … Appellant's convictions for murder in the third degree[ and PIC], and [the finding] that deadly force was not justified beyond a reasonable doubt?

3. Was conviction for murder in the third degree[ and PIC], and the [finding that the] use of deadly force was not justified against the weight of the evidence?

Appellant's Brief at 4-5 (unnecessary capitalization and proposed answers omitted).[6]

### I.    Challenge to Jury Instructions

First, we address Appellant's challenge to the jury instructions on self-defense, the presumption of a reasonable belief that deadly force is justified, and the circumstances under which the presumption does not apply.  This Court recently stated:

> When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict.  In examining jury instructions, our standard of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.  A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.  Moreover, in reviewing a challenge to a jury instruction, the entire charge is considered, not merely discrete portions thereof.  The trial court is free to use its own expressions[,] as long as the concepts at issue are clearly and accurately presented to the jury.

*Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa. Super. 2020) (internal citations, quotations, and original brackets omitted).

Section 505 of the Crimes Code sets forth the elements of self-defense. *See* 18 Pa.C.S. § 505(a) ("The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such

---

[6] We have renumbered Appellant's questions for ease of disposition.

other person on the present occasion."). Limitations on the justifiable use of force in self-defense are outlined in Section 505(b). *See* 18 Pa.C.S. § 505(b). The Commonwealth can negate a self-defense claim by proving one of the following: "(1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009).

> Under Pennsylvania law,
>
> [A]n actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against[, *inter alia*,] death[ or] serious bodily injury … if both of the following conditions exist:
>
> (i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; …
>
> (ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505(b)(2.1)(i)-(ii).[7] This presumption does not apply if "the actor is engaged in a criminal activity or is using the dwelling, residence or occupied vehicle to further a criminal activity." 18 Pa.C.S. § 505(b)(2.2)(iii). "Criminal activity" is defined by the statute as "conduct which is a misdemeanor or

---

[7] Section 505(b)(2.1) codified the traditional common law castle doctrine—the principle that a man's home is his castle and that one should not be required to retreat from his sanctum. *Commonwealth v. Childs*, 142 A.3d 823, 829 (Pa. 2016).

felony, is not justifiable under this chapter and is related to the confrontation between an actor and the person against whom force is used." 18 Pa.C.S. § 505(d).

Here, Appellant claims that he was entitled as a matter of law to a jury charge that he was presumed to have a reasonable belief that deadly force was immediately necessary to protect himself from death or serious bodily injury—the castle doctrine presumption. Appellant's Brief at 21. He asserts, however, that the trial court misinterpreted the exception to the castle doctrine presumption outlined in Section 505(b)(2.2)(iii), and the definition of "criminal activity" under Section 505(d), and that instead of determining he was entitled to the castle doctrine presumption as a matter of law, it submitted the question to the jury. *Id.* Appellant claims that this misinterpretation of the law and omission from the jury charge was a fundamental error on the part of the trial court. *Id.* No relief is due on this claim.

Appellant's claim is largely based on his incorrect assertion that the trial court determined the illegal possession of a firearm to be *per se* "criminal activity" under the Section 505(b)(2.2)(iii) exception, rather than applying the 3-prong definition of "criminal activity" as defined under Section 505(d). *Id.* at 26. The record clearly belies this claim. Contrary to Appellant's allegation, the trial court never made a determination as to whether the illegal possession of a firearm by a person who is prohibited from possessing a gun due to a prior felony conviction constitutes "criminal activity" under Section 505. The

court heard argument at trial on this very issue,[8] but before ruling on whether the Section 505(b)(2.2)(iii) "criminal activity" exception includes such illegal possession of a firearm, the parties entered the following stipulation on the record:

> The defendant is prohibited by law from possessing a firearm in his home. If the defendant knowingly and voluntarily possessed the .38 caliber firearm inside his home and that firearm was not brought into his home by another person, then he would be in unlawful possession of that firearm inside of his home.

N.T. Trial, 11/1/18, at 146.[9] Appellant confirmed on the record that he was agreeable to the stipulation.[10] We note that because no objection to the

_____

[8] The Commonwealth argued that the "presumption-disqualifying circumstance of engaging in 'criminal activity' under Section 505(b)(2.2) includes a violation of Section 6105, possessing a firearm as a prohibited person." Commonwealth's Brief at 13 (citing N.T. Trial, 10/29/18, at 25-26). Appellant countered that the legislature did not intend for "criminal activity" to include illegal possession of a firearm, or it would not have separately included the phrases "engaged in criminal activity" and "in illegal possession of a firearm" in Section 505(b)(2.3), regarding the duty to retreat. TCO at 11; N.T. Trial, 11/1/18, at 112-145.

[9] The parties voluntarily reached the stipulation, at the *suggestion* of the trial court, as a means of avoiding the introduction of potentially prejudicial evidence by the Commonwealth regarding Appellant's prior, qualifying conviction to prove that he violated Section 6105. **See id.** at 84-85 (the trial court's clarifying "I'm just making a suggestion. I'm not making a ruling…. And just so the record is clear, I haven't ruled on any of this"). Consequently, the jury was only presented with evidence of Appellant's previous conviction of aggravated assault in a subsequent, bifurcated proceeding.

[10] **See id.** at 144 ("What is your position on the stipulation as agreed? Are you agreeable … that that is an appropriate way to benefit both sides where he gets an opportunity to argue the presumption doesn't apply and you're avoiding on the defense side the evidence being produced that would show your client has a criminal record?"). Appellant's counsel confirmed that he was "good with" the stipulation "we drafted together." **Id.**

stipulated facts was made at trial, Appellant has waived the right to raise any such objection on appeal. ***See Jones v. Ott***, 191 A.3d 782, 787 (Pa. 2018) ("In order to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record. Issues that are not preserved by specific objection in the lower court are waived.") (internal citations omitted).

Before we address the merits of the remainder of Appellant's claim, we examine the instruction, in relevant part, delivered by the trial court during its final charge to the jury:

> The evidence in this case presents the question of whether the defendant acted in self-defense when he shot Edward Neal. Self-defense is called justification in the law of Pennsylvania. And if the defendant's actions were justified, you cannot find him guilty beyond a reasonable doubt of any of the homicide charges. Since the Commonwealth has the burden of proof in this case, the Commonwealth must prove to you that the defendant did not act in justifiable self-defense beyond a reasonable doubt.

> To carry its burden of proving that the defendant's use of deadly force was not justifiable self-defense in this case, the Commonwealth must prove one of the following elements beyond a reasonable doubt— … it's worded this way … because three things have to be present for the defense of justification to exist under our law. If all three of those things are there, then a killing is justified[,] and the defendant is not guilty of any form of homicide. Since the Commonwealth has the burden of proof, it has to disprove one or more of those different elements. And so that's why this jury charge is phrased in this way….

> Once again, to carry its burden of proving the defendant's use of deadly force was not justifiable self-defense in this case, the Commonwealth must prove one or more of the following elements beyond a reasonable doubt: A – the three elements are labeled in this instruction A, B, and C. So[,] we'll start with the first element.

> A, that at the time the defendant used the deadly force either, one, the defendant did not actually believe that he was in danger

- 10 -

of death or serious bodily injury from the alleged victim such that the defendant needed to use deadly force to defend himself at that moment; or two, that while the defendant actually believed he needed to use such force, his belief was unreasonable in light of all of the circumstances known to him.

In making this determination, you must understand that the law presumes a defendant to have a reasonable belief that deadly force is immediately necessary to protect himself against death or serious bodily injury if both of the following conditions exist: First, the person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling or residence; and second, the defendant knows or has reason to believe that the unlawful and forceful entry is occurring or has occurred.

In fact, the law further presumes that someone who unlawfully and by force enters or attempts to enter a defendant's dwelling or residence, is acting with the intent to commit an act resulting in death or serious bodily injury. And if the defendant knows or has reason to believe that this unlawful and forceful entry is occurring or has occurred, the law then presumes that the defendant's belief in the necessity of using deadly force is reasonable and justified.

However, **a defendant is not presumed to have a reasonable belief that deadly force is immediately necessary to protect himself when the defendant is engaged in a criminal activity** or is using the dwelling or residence to further a criminal activity. And **criminal activity means conduct that is a misdemeanor or felony, is not justifiable under the Crimes Code, and is related to the confrontation between an actor and the person against whom force is used.**

Keep this in mind: A person is justified in using deadly force against another not only when he is in actual danger of unlawful attack, but also when he mistakenly, but reasonably, believes that he is. A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time. In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect himself. Consider the realities of the situation faced by the defendant here when you assess whether the Commonwealth has proven beyond a reasonable doubt either that he did not believe he was actually in

- 11 -

danger of death or serious bodily injury to the extent that he needed to use such force in self-defense, or that while he did believe that, his belief was unreasonable. That's the first element.

Or B, this is the second element, that in the same encounter with the alleged victim, the defendant provoked the use of force against him by engaging in conduct that demonstrated he intended to cause death or serious bodily injury to others.

To make this determination, you must find the following: One, that the defendant engaged in conduct that showed it was his conscious object to cause death or serious bodily injury to the alleged victim, or to someone else in the immediate proximity of the alleged victim. Now, only conduct of this most serious nature constitutes the kind of provocation upon which the Commonwealth may rely to prove its case.

Two, but even if you find beyond a reasonable doubt that the defendant's acts were of such a nature, you must then ask whether it provoked the similar use of force against him. And in this assessment, the conduct by the defendant may be the initial provocation of the fight, or it may be an act that continues or escalates it. However, even if the defendant was the initial aggressor or was the person who escalated the incident to one involving the use of deadly force, if he thereafter withdraws in good faith, making it clear that his further intentions are peaceable, and the alleged victim pursues him and renews the fight, the defendant does not forfeit his right to claim justifiable self-defense.

However, if you find beyond a reasonable doubt that the defendant provoked the use of force against him by engaging in conduct that showed he intended to cause death or serious bodily injury to the alleged victim or someone else in the immediate proximity of the alleged victim, you may find that the defendant's conduct was not justified.

Or, finally, C, the third element, that the defendant had a duty to retreat instead of using deadly force and did not fulfill that duty. A duty to retreat arises where the defendant knows that he could avoid the necessity of using deadly force with complete safety by retreating.

However, there are certain exceptions to this duty to retreat. In particular, with regard to this case, a defendant is not obligated to retreat from his dwelling unless he was the initial aggressor.

- 12 -

So[,] a defendant who was in his dwelling need not retreat, has no duty to retreat, unless he was the initial aggressor.

Now, if the Commonwealth proves one of these elements beyond a reasonable doubt, the actions of the defendant in using deadly force are not justified. If the Commonwealth fails to prove these elements, the defendant's action was justified[,] and you must find him not guilty of the homicide charges.

N.T. Trial, 11/2/18, at 154-61 (emphasis added).

The Commonwealth correctly notes that, as a result of the parties' stipulation, "the court did not instruct the jury on the meaning of 'criminal activity' beyond the definition in the statute and did not make any mention of whether such activity includes illegally possessing a gun." Commonwealth's Brief at 8. The Commonwealth adds:

Notably, whether [Appellant] was engaged in "criminal activity" was only relevant for purposes of whether the evidentiary tool of the castle doctrine presumption applied; a finding of "criminal activity" does not preclude a justification defense. The jury could have still found that [Appellant] acted in self-defense even if it concluded that the presumption was not triggered.

*Id.* (unnecessary capitalization omitted). We agree.

In regard to Appellant's assertion that the trial court should have decided as a matter of law that the castle doctrine applied here, rather than leaving it as a question for the jury, we deem this claim to be meritless. It is well-established that trial courts are tasked with the responsibility of determining whether the facts at trial permit a self-defense instruction. *Commonwealth v. Cannavo*, 199 A.3d 1282, 1288 (Pa. Super. 2018). We have further established that the standards for permitting a castle doctrine instruction are the same as when reviewing whether a self-defense instruction

- 13 -

is appropriate, "namely, that 'a valid claim of self-defense [or the castle doctrine] must be made out as a matter of law, and this determination must be made by the trial judge. Such claim may consist of evidence from whatever source.'" *Id.* at 1287-88 (quoting *Commonwealth v. Mayfield*, 585 A.2d 1069, 1070 (Pa. Super. 1991) (*en banc*) (brackets added by the *Cannavo* Court)). Thus, a court does not necessarily assess burdens of proof when considering the applicability of a castle doctrine instruction, but instead whether there was any evidence to justify the instruction. *Id.* at 1288.

In the case *sub judice*, the trial court clearly determined that there was "evidence from whatever source," to justify the castle doctrine instruction, as such instruction was included in its jury charge. *See* N.T. Trial, 11/2/18, at 157-58. Based on our review, we deem the trial court's finding to be supported by the record. Once the instruction is given, it is then for the jury to decide whether the presumption applies based upon its findings of fact. *See Mayfield*, 585 A.2d at 1071 ("If there is any evidence from whatever source that will support these three elements [of self-defense,] then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.").

If the trial court were to determine whether the castle doctrine claim is valid, as Appellant suggests it should have done, it would be required to decide the necessary facts which trigger the presumption and/or disqualifying circumstances, which would usurp the jury's fact-finding function. *See Commonwealth v. Conaway*, 105 A.3d 755, 760 (Pa. Super. 2014) (finding

- 14 -

that the trial court impermissibly usurped the jury's fact-finding role where the trial court specifically instructed the jury that the Commonwealth had established a disputed element of a burglary charge). Accordingly, we determine that the trial court appropriately instructed the jury on the castle doctrine presumption and the circumstances under which it would not apply. Moreover, we conclude that the trial court's jury instruction was a clear and accurate representation of the law pertaining to self-defense and the castle doctrine, as it closely tracked the statutory language of Section 505. "It is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016).

In response to Appellant's argument that the "criminal activity" exception to the castle doctrine presumption does not apply in this case, because the legislature did not intend for the exception to include the illegal possession of a firearm, we agree with the trial court that this precise argument was rejected by the *Cannavo* Court. **See** TCO at 11 (citing *Cannavo*, 199 A.3d at 1289-90). As opined by the trial court:

> In the section of the statute regarding the duty to retreat, the statute states that there is no duty to retreat if, among other requirements, the actor "is not engaged in criminal activity" and "is not in illegal possession of a firearm…." 18 Pa.C.S. § 505(b)(2.3). [Appellant] argues that because the requirements set forth in section 505(b)(2.3) separately include "not engaged in criminal activity" and "not in illegal possession of a firearm," the legislature must not have intended "criminal activity" to include "illegal possession of a firearm," or the separate listing of illegal possession of a firearm would be surplusage…. The [*Cannavo*] Court … stated that because section 505(b)(2.3) concerns the duty to retreat, it "has no bearing" on whether a

- 15 -

defendant's conduct constitutes criminal activity within the definition of [S]ection 505(d). *Id.* at 1290. Accordingly, the Superior Court concluded that the illegal possession of a firearm may be "criminal activity" and the basis for a finding that the castle doctrine presumption does not apply. *Id.*

Here, the [c]ourt charged the jury on the application of the castle doctrine presumption using the exact definition of "criminal activity" set forth in section 505(d).[11] Under *Cannavo*, it was entirely proper for the jury to consider [Appellant's] illegal possession of a firearm as the basis for a finding that [he] was engaged in criminal activity and that the castle doctrine presumption did not apply.

---

[11] We acknowledge that the trial court referenced the "Crimes Code" rather than "this chapter" during its charge regarding the definition of "criminal activity" under Section 505(d). *See* N.T. Trial, 11/2/18, at 157-58 ("And criminal activity means conduct that is a misdemeanor or felony, is not justifiable under the *Crimes Code*, and is related to the confrontation between an actor and the person against whom force is used.") (emphasis added). However, to the extent that Appellant objects to the use of the language "Crimes Code," we deem such claim to be waived, due to his failure to raise the objection prior to the jury's deliberation. *See* Pa.R.Crim.P. 647(C) ("No portions of the charge … may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). Nevertheless, even if Appellant had preserved this claim, we would determine that no relief was due. "A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error." *Commonwealth v. Serge*, 837 A.2d 1255, 1265 (Pa. Super. 2003). "We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Commonwealth v. Prosdocimo*, 578 A.2d 1273, 1276 (Pa. 1990). As the Commonwealth notes,

if anything, the instruction as given benefited [Appellant] by referring to a broader body of law to potentially provide a justification for his "criminal activity" of illegally possessing a firearm. Referring to justification under the Crimes Code as a whole, rather than just Chapter 5, did not change the meaning of the jury instruction and did not deprive [Appellant] of a fair trial.

Commonwealth's Brief at 16.

TCO at 11-12 (citation to record omitted).

We further deem any challenge by Appellant to the standard jury instructions given to be waived, as our review of the record reflects that Appellant failed to state any exceptions after the trial court read the jury charge. *See* N.T. Trial, 11/2/18, at 176-78; Pa.R.Crim.P. 647(C). Appellant asserts that, throughout the trial, he consistently argued his position that he was entitled to the castle doctrine presumption and that the "criminal activity" exception under Section 505(b)(2.2) does not apply. We are constrained to conclude, however, that the foregoing objections raised by Appellant were not sufficient to preserve a challenge to the jury charge, as his objections were made prior to trial or during the charging conference, rather than after the charge was read and before the jury deliberated. *See Commonwealth v. Cosby*, 224 A.3d 372, 422 (Pa. Super. 2019) (deeming the appellant's objection to a jury instruction waived for failure to adequately preserve the issue below, where the appellant argued prior to the jury charge that the instruction should not be issued but made no objection to the actual instructions after they were given); *Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014) (determining an objection made at the charging conference was insufficient to preserve a claim challenging that instruction on appeal, where the defendant failed to object after the jury was charged when prompted by the court).

Lastly, Appellant contends in his brief that allowing the verdict to stand would establish bad precedent, allowing a jury to determine whether a legally

protected presumption is justified and to disregard the law. Appellant's Brief at 39-42. Appellant's "constitutional law and public policy" argument is waived due to his failure to include it in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation … therefore, we look first to the language of that order.") (internal quotation marks and citations omitted); Trial Court Order, 7/10/19, at 1 (unnumbered page) (warning Appellant that "[a]ny issues not contained in a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal … will be deemed to have been waived").

## II. Sufficiency of the Evidence

Appellant asserts that the evidence at trial was insufficient to sustain his convictions of third-degree murder and PIC, and to sustain the jury's determination that the use of deadly force was not justified. Appellant's Brief at 49. We observe, however, that Appellant's Rule 1925(b) statement only generally challenged the sufficiency of the evidence to prove his guilt as to murder in the third degree and PIC, without specifying which elements of these crimes the Commonwealth failed to prove, nor did it mention any challenge whatsoever to the sufficiency of the evidence to support the jury's

finding regarding the use of deadly force. **See** TCO at 2-3 (reproducing *verbatim* Appellant's statement of errors complained of on appeal).

Initially, we deem the sufficiency claim regarding the jury's finding that Appellant was not justified in the use of deadly force to be waived, as Appellant failed to include this issue in his Rule 1925(b) statement and, accordingly, the issue was not addressed by the trial court in its opinion. "The Pennsylvania Supreme Court has explained that the Rule 1925 [statement] is a crucial component of the appellate process, which is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." **Commonwealth v. Proctor**, 156 A.3d 261, 267 (Pa. Super. 2017) (internal citations omitted). Moreover, it is well-settled that issues not set forth in an appellant's Rule 1925(b) statement are deemed waived. **See id.** (citing Pa.R.A.P. 1925(b)(4)(vii)).

Appellant's claims regarding the sufficiency of the evidence to support his third-degree murder and PIC convictions are also waived, as Appellant's Rule 1925(b) statement fails to identify which elements of these crimes the Commonwealth allegedly failed to prove. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(ii) provides that a Rule 1925(b) statement "**shall** concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P.(b)(4)(ii) (emphasis added). Generally, if an appellant "wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement **needs to** specify the element or elements upon which the evidence was insufficient."

*Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting *Commonwealth v. Flores*, 921 A.2d 517, 522 (Pa. Super. 2007) (superseded by statute and overruled in part on other grounds) (emphasis added)).  A failure to do so may result in waiver.  *Id.*  Although the trial court addressed the topic of sufficiency regarding the third-degree murder and PIC charges in its opinion, "this is of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim."  *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (citations omitted).

Additionally, Appellant's argument regarding the sufficiency of evidence to support these two convictions is underdeveloped.  "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review."  *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007).  Appellant's argument consists merely of bald assertions that "[t]here is little to no evidence of malice[,]" that the evidence indicates Appellant "was acting reasonably in accordance with what is expected of him[,]" and that the evidence was insufficient to find him "guilty of possessing or employing anything criminally[.]"  Appellant's Brief at 49-50, 53.  He provides no legal analysis in the argument section of his brief and fails to cite to any legal authority whatsoever in support of his argument, in violation of Pa.R.A.P. 2119(a).  Instead, he is essentially asking this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder, which we cannot and

will not do. *See Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.

Super. 2016).

Even if Appellant had not waived his sufficiency claims, we would deem

them meritless.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa. Super. 2014)

(internal citations omitted).

As the trial court so aptly opined:

> Here, there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that [Appellant] did not reasonably believe, nor actually believe, that he was in immediate danger of death or serious bodily injury at the time he used deadly force against … Neal. In particular, the Commonwealth convincingly proved that [Appellant] shot and killed Neal after the fight had ended and there were no longer any threats of danger. As a result, the jury properly rejected both self-defense, and imperfect

self-defense, and lawfully convicted [Appellant] of third[-]degree murder.

Both … Stewart and Lacricia … testified that as [Appellant] and Stewart fought in the living room of the home [Appellant] and Patricia … shared, Neal came in through the open front door and attempted to break up the fight. Both Stewart and Lacricia testified that Neal physically restrained Stewart, who was 5 feet and 3 inches tall and weighed 156 pounds, but Neal did not get physical with [Appellant]. According to both Stewart and Lacricia, after Neal separated the two men, [Appellant] began to walk backwards into the dining room and pulled out a gun from the back of his pants. Both Lacricia and [Appellant] testified that [Appellant] was standing near the drum set in the living room when [he] fired the weapon. Stewart testified that when [Appellant] fired the weapon, Stewart was standing near the front door in the living room, which is approximately 12 feet away from the dining room, and Neal was standing in between [Appellant] and Stewart. Accordingly, the evidence established that after the fight ended, and while the person with whom [Appellant] had been fighting was 12 feet away, [Appellant] fired his weapon.

Moreover, the physical evidence corroborated Stewart and Lacricia's testimony. The medical examiner testified that there was no soot, stippling, or searing found on Neal's two gunshot wounds, which indicated that he was shot from a distance further than 2 or 3 feet away. The medical examiner also testified that Neal suffered two gunshot wounds to the right side of his body, his upper arm and neck. The gunshot wounds demonstrated that if Neal was in the process of attacking [Appellant] when he was shot, he would have been moving toward [Appellant] sideways. In addition, except for [Appellant's] testimony, there was no evidence presented that anyone other than [Appellant] was in possession of a weapon.

Further, [Appellant's] actions after shooting Neal demonstrated [his] consciousness of guilt and[,] therefore[,] supported the jury's findings. Stewart testified that after he saw Neal fall to the ground, Stewart moved towards [Appellant], put him in a chokehold, and forced the gun from his hand. According to Stewart and Lacricia, as Stewart was running out the door with the gun to throw it in the street, [Appellant] began to run upstairs and stated that he had "another one." Lacricia testified that [Appellant] then went into her mother's bedroom and told Patricia, "bitch, I'mma kill you next."

- 22 -

In addition, the evidence demonstrated that [Appellant] attempted to conceal a firearm after the shooting. Stewart testified that after discarding the firearm used to shoot Neal, he saw [Appellant] on the porch handing an unknown object to a white male before both men walked to [Appellant's] truck and got in it. According to Officer Joseph Simpson, who arrived on scene shortly after the shooting, he saw [Appellant] in the driver's seat and a white male in the passenger seat of a white truck that had its headlights on and was running. Officer Terry Tull, a member of the Crime Scene Unit, testified that officers found a black and silver .38 caliber revolver in the street and also found a .22 revolver inside of a flower pot behind [Appellant's] truck. DNA analysis showed that [Appellant's] DNA was present on the grip, cylinder release, trigger, and hammer of the .22 revolver. Finally, [Appellant] testified that when he first encountered police, he did not tell them that two people had just attempted to attack him in his own home. All of [Appellant's] actions after shooting Neal were inconsistent with having a belief that he had acted in self-defense.

All of the evidence established that [Appellant] shot and killed Neal after the fight had ended and there were no longer any threats of danger. This was compelling proof that [Appellant] could not have believed, reasonably or otherwise, that he was in immediate danger of death or serious bodily injury when he shot and killed Neal. Although [Appellant] testified that Stewart pulled out a gun and struck him multiple times with it, that Stewart and Neal were charging toward him, and that he believed Neal was reaching for a gun, the jury was free [to] reject this testimony as incredible. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).[8] Accordingly, there was ample evidence to support the jury's decision to convict [Appellant] of third[-]degree murder.

[8] As stated … above, the [c]ourt's instruction on self-defense included the provision regarding the castle doctrine presumption…. This presumption … does not apply if … "the actor is engaged in a criminal activity…." 18 Pa.C.S. § 505(b)(2.2)(iii). Also as discussed … above, the illegal possession of a firearm that is used to shoot the victim can constitute "criminal activity." … *Cannavo*, 199 A.3d [at] 1289-90…. Here, there was sufficient evidence that [Appellant] was engaged in criminal activity in that the parties stipulated that [Appellant] was prohibited by law from possessing a firearm in his home, and the evidence described above established that [Appellant] was in knowing

and intentional possession of the firearm he used to shoot Neal. However, even if the jury found that the presumption did apply, the evidence stated above[] would be sufficient to rebut it.

…

[T]he evidence described above established that [Appellant] killed … Neal with a gun that he knowingly possessed and that the killing was not justified. Accordingly, the Commonwealth proved that [Appellant] possessed the gun for a criminal purpose, used it to commit a crime, and possessed it under circumstances not appropriate for its lawful use. Therefore, the evidence established that [Appellant] was guilty of PIC.

TCO at 14-18 (citations to record omitted). Based on our review, we would deem the trial court's findings to be properly supported by the record.

## III. Weight of the Evidence

Appellant avers that the verdicts of guilt on his third-degree murder and PIC charges, as well as the jury's finding that he was not justified in using deadly force, are not supported by the weight of the evidence. Appellant's Brief at 42. In his Rule 1925(b) statement, Appellant merely stated "that the verdict of guilt was against the weight of the evidence as to [m]urder of the [t]hird [d]egree and [PIC]." TCO at 3. Accordingly, we deem Appellant's weight challenge to the jury's determination regarding the use of deadly force to be waived due to his failure to include this issue in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the Rule 1925(b) statement are waived).

Additionally, we conclude that Appellant's challenge to the weight of the evidence regarding his third-degree murder and PIC convictions are also waived, as a result of his failure to specify in his Rule 1925(b) statement the

reasons why the verdicts were contrary to the weight of the evidence. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) (determining that the appellant had waived review of his weight of the evidence challenge where he failed to offer specific reasons as to why the verdicts were contrary to the evidence's weight); *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002) (concluding that the appellant's weight of the evidence issue was too vague to permit review where his Rule 1925(b) statement merely contained boilerplate language); *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (noting that a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all).

Nevertheless, even if Appellant had properly preserved these claims, we would determine that no relief is due. It is well-settled that:

> "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Clay*, … 64 A.3d 1049, 1054-55 ([Pa.] 2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* at 1055. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 1054. The appellate court reviews a weight claim using an abuse of discretion standard. *Id.* at 1057.

- 25 -

> At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." *Commonwealth v. Sanchez*, … 36 A.3d 24, 27 ([Pa.] 2011) (citation omitted). A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. *See Commonwealth v. Rivera*, … 983 A.2d 1211, 1220 ([Pa.] 2009) (stating that "the trier of fact, in passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence") (citation omitted).

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017).

Instantly, Appellant concedes that he used deadly force against Stewart and accidentally shot Neal, resulting in Neal's death. Appellant's Brief at 43. He essentially argues, however, that his convictions should be overturned "[b]ecause the weight of the evidence in this case overwhelmingly supports that [he] was not the initial aggressor, he did not provoke the use of force against himself, he had a reasonable belief that deadly force was immediately necessary," and that he was entitled to the castle doctrine presumption. *Id.* at 48. In support of his argument, Appellant merely recounts the testimony of multiple witnesses at trial.

We note that Appellant's argument ignores the well-settled principles of law that the finder of fact makes credibility determinations and is free to believe all, part, or none of the evidence. *Jacoby*, *supra*. The jury was free to believe the testimony of the Commonwealth's witnesses over that of Appellant and to weigh the testimony accordingly. Moreover, the trial court stated in its opinion that "the evidence outlined … above, plainly established that [Appellant] committed the crimes of which he was convicted." TCO at

19. Having already concluded that we would determine the verdicts are supported by the evidence, we would not discern any abuse of discretion in the trial court's denying Appellant's motion for a new trial.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/21